LORING, *Appellant*, v. GROOMER *et al.*

Division One, June 20, 1892.

1. **Practice:** AMENDMENT OF RECORD: NUNC PRO TUNC ENTRIES. A court of record, when having as a basis something of record or among the files to amend by, may make corrections *nunc pro tunc* in order to make the record conform to what was actually done.

2. ———: ———: ———. Such power is inherent in the court, and seems to be uncontrolled by any limitation in point of time.

3. ———: ———: ———: PARTITION. A mistake in a final judgment for partition of land may be amended *nunc pro tunc*.

4. **Partition:** INTERLOCUTORY DECREE: CLERICAL ERROR. An interlocutory judgment in partition is the commissioners' authority to act, and it will be presumed they acted in accordance with it, and that any variance in the description of the land between it and the final decree is a clerical error.

5. **Conveyance:** CHAIN OF TITLE, NOTICE OF FACT IN. Where one cannot make out his title to land except through a deed or other instrument which leads him to the knowledge of another fact, he will be deemed to have knowledge of the fact.

6. **Practice:** NUNC PRO TUNC ORDER: NOTICE. Failure to notify one of the application to amend a final judgment in partition *nunc pro tunc* will not affect the validity of the order where no objection to the amendment would have availed.

*Appeal from DeKalb Circuit Court.*—HON. C. H. S. GOODMAN, Judge.

AFFIRMED.

*Samuel G. Loring pro se.*

(1)   The court erred in admitting in evidence the amended final judgment in the case of Groomer *v.* Groomer entered of record at April term, 1884. (2)   The judgment rendered and entered of record at the March term, 1872, in said case, confirming the commissioners' report in said case, and adjudging the title to the lands described in said report to be in the several parties as therein set forth, was a final judgment.. *Parkinson v. Caplinger,* 65 Mo. 292; *Halladay v. Langford,* 87 Mo. 582.   (3)   And is binding and conclusive upon all the parties.   General Statutes of 1865, sec. 25, p. 612; *Babb v. Graham,* 89 Mo. 200; *Halladay v. Langford,* 87 Mo. 582; 1 Herman on Estoppel, etc., pp. 304–7; *Forder v. Davis,* 38 Mo. 114; *State v. Moore,* 18 Mo. App. 410.   On infants as well as adults.   *Rolf v. Timmermeister,* 15 Mo. App. 254. (4)   It makes no difference how erroneous the judgment may have been.   The parties had the opportunity to have the commissioners' report set aside for good cause at the March term, 1872.   If there was a good cause, they should have spoken then.   *Knall v. Moelken,* 13 Mo. App. 276; *State v. Donegan,* 12 Mo. App. 201. (5)   The final judgment of partition as between the parties to the suit was the same as that of a deed of general warranty, and all are estopped from saying that they did not in March, 1872, own the south half of the northwest quarter of section 14, township 60, range 30.   *Forder v. Davis,* 38 Mo. 115; *Halladay v. Langford,* 87 Mo. 582; Freeman on Judgments, sec. 608; *Edson v. Munsell,* 13 Allen (Mass.) 600.   (6)   As a general rule, no final judgment can be amended after the term at which it was rendered.   The law does not authorize the correction of judicial errors under the pretense of correcting clerical errors; but a court at

any time may correct a clerical error by the minutes of the judge or some record in the case showing clearly that such a clerical error was committed. *Ross v. Ross*, 83 Mo. 102; *Belken v. Rhodes*, 76 Mo. 651; *Evans v. Fisher*, 26 Mo. App. 547. (7) A judgment *nunc pro tunc* cannot be made to operate to the prejudice of the rights of third parties acquired in good faith between the time of the rendition of the original judgments and the entry of the judgment *nunc pro tunc*. *McClannahan v. Smith*, 76 Mo. 430; *Coe v. Ritter*, 86 Mo. 287; *Koch v. Railroad*, 77 Mo. 355.

*Alexander & Richardson* for respondents.

(1) It clearly appears from an inspection of the record that the final judgment as entered by the clerk was not in conformity with the interlocutory judgment or the commissioners' report, and the court was warranted in acting upon the presumption that it was a clerical mistake, rather than a judicial blunder, and in setting the judgment entry right by an amendment *nunc pro tunc*. Freeman on Judgments [3 Ed.] sec 70, *et seq.* If the clerk fails to enter judgment or enters up the wrong judgment, the court may correct the error, and the proper entries may be made at another term, but the records must show the facts which authorize the entry. *Saxton v. Smith*, 50 Mo. 490; *Priest v. McMaster*, 52 Mo. 60; *Dunn v. Raley*, 58 Mo. 134; *Allen v. Sales*, 56 Mo. 28; *Fletcher v. Coombs*, 58 Mo. 430; *State v. Jeffors*, 64 Mo. 376; *Belken v. Rhodes*, 76 Mo. 643; Freeman on Judgments [3 Ed.] sec. 71, and cases cited. The rule stated, Freeman on Judgments, sec. 72. Such mistake may be corrected at any time. *Coop v. Northcutt*, 54 Mo. 128. A decree in one instance being entered after a lapse of twenty-three years. Freeman on Judgments, sec. 56, note 1, and

cases cited. (2) The court did not err in refusing plaintiff's second declaration of law. (3) One who takes with notice of an equity takes subject to that equity. *Major v. Buckley*, 51 Mo. 227; *Meier v. Blume*, 80 Mo. 179. And holds in trust for equitable owner. *Widdecombe v. Childers*, 84 Mo. 382. And equitable title will prevail, where owner of legal title had knowledge of existence of former, or had such means of knowledge, as to put him on inquiry. *Swisher v. Sensenderfer*, 84 Mo. 104. The claim of counsel for appellant that defendant is estopped to deny plaintiff's title or set up title in himself is not well founded. Minors are not subject to binding effect of an estoppel. *Campbell v. Gaslight Co.*, 84 Mo. 352. The public is bound to take notice of the records. Freeman on Judgments, sec. 66, and cases cited. A mere inspection of the records in the partition suit would have disclosed defendant's title, as the error was apparent.

SHERWOOD, P. J.—In October, 1888, the plaintiff brought ejectment for an undivided five-sixths of the following described land in DeKalb county, to-wit: The south half of the northeast quarter of section 14, township 60, range 30. The answer put in issue the allegations of the petition.

This litigation grows out of partition proceedings among the heirs of William J. Groomer, who is the common source of title. He left six heirs, Logan P. Groomer, the defendant, being one of them, who, it was admitted, was in possession of the land described in the plaintiff's petition, at the commencement of this action.

Partition of the lands which were described in the original petition was had in 1872, and final judgment entered. But the original petition and all the original papers, as well as the report of the commissioners, were

lost. The interlocutory decree, however, showed that the only land in section 14 ordered to be divided among the heirs as tenants in common was the south half of the north*east* quarter and the southeast quarter of the northwest quarter of section 14, township 60, range 30.

The record of the final judgment in partition showed that there had been allotted to Logan P. Groomer the south half of the north*west* quarter and southeast quarter of the north*west* quarter of section 14, etc. And the report of the commissioners, as recorded, showed the same description as that just mentioned, and that said land as thus described had been allotted to the defendant, Logan P. Groomer.

After the partition proceedings were had, the interest of the heirs in the land in suit, except that of the defendant, was conveyed by mesne conveyances to the plaintiff, the first deed being dated in 1874 and others in 1875, 1878 and 1880, which conveyed the legal title to the land in controversy to Sampson F. Jones. In 1881, Sampson F. Jones conveyed the same land by general warranty deed to Henry F. Wilson, trustee for John Wilder, to secure a note for $800. In execution of the power contained in the deed of trust, the trustee sold the land to plaintiff in 1888, executing a conveyance in usual form.

In 1883, the defendant discovering the alleged mistake in the description in the land allotted to him, which consisted as already seen in a single word, to-wit, the word *"west"* instead of the word *"east,"* served notice on all the parties to the original proceedings of his intention to move the court to correct the final judgment in partition in the particular aforesaid. Simon Jones and Sampson F. Jones, both being grantees of said land through mesne conveyances, were also notified respecting said motion; but neither Wilson,

the trustee, nor Wilder, the beneficiary, in said deed of trust were thus notified.

In 1884, the circuit court made the correction as prayed, by entering a final judgment *nunc pro tunc* as of the date of the original judgment rendered in 1872; and this correction it appears was made on the basis of the correctness of the interlocutory judgment of 1871.

From this final judgment entered *nunc pro tunc*, no appeal was taken. It nowhere appears who, if anyone, was in possession of the land in suit, except as already stated as having been admitted; but this admission obviously does not cover the period of time intervening between the final judgment in partition and the sale made under the deed of trust in 1888. At the close of the evidence the court gave judgment for the defendant, refusing the following declaration of law asked by plaintiff: "The court declares the law that under the judgment entered of record at the March term, 1872, of this court in the case of William R. Groomer and David Groomer, plaintiffs, against Sarah J. Groomer *et al.*, defendants, in proof, this defendant was only the owner and entitled to the possession of one undivided one-sixth of the lands in controversy, and all and every person had a right to, and may safely, rely upon said judgment as then entered upon the records of this court as being absolutely the true judgment in said case, and that the amended judgment in said case, entered of record at the April term, 1884, thereof, through which this defendant claims title to all of said land, is absolutely void and of no effect against this plaintiff, and cannot in anywise affect or prejudice his right to recover in this case, and this court will find for the plaintiff, unless it further finds from the evidence that at the time of the execution of the deed of trust in proof from Sampson F. Jones to Henry C. Wilson as trustee for John Wilder, to-wit, July 26, 1881, the said

Henry C. Wilson and John Wilder knew, or had actual notice, both that said judgment entered of record at the March term, 1872, was not the true judgment in said case, and that this defendant then owned all of said land, the proving of all which facts to its satisfaction, by the preponderance of the evidence, rests upon defendant."

The court, however, gave the following declaration of law at the instance of the plaintiff: "The court declares the law that the several deeds read in evidence upon the part of the plaintiff for the lands in said suit, to-wit:

"*First.* The deed from Wm. R. Groomer to Silas Best.

"*Second.* The deed from Silas Best to Wm. W. Brotcher.

"*Third.* The deed from Wm. W. Brotcher and America J. Brotcher, his wife, to David Groomer.

"*Fourth.* The deed from David Groomer to Christopher Groomer.

"*Fifth.* The deed from Richard Groomer to Christopher Groomer.

"*Sixth.* The deed from Christopher Groomer and Sarah J. Groomer to Simon Jones.

"*Seventh.* The deed from Simon Jones to Sampson F. Jones.

"*Eighth.* The deed of trust from Sampson F. Jones to Henry C. Wilson, trustee for John Wilder.

"*Ninth.* The trustee's deed from George W. Toms, trustee, to the plaintiff, Samuel G. Loring, makes out a *prima facie* case of title to the lands in suit in the plaintiff, and it devolves upon this defendant to prove by the preponderance of the evidence that at the time plaintiff commenced this suit, to-wit, September 21, 1888, he, plaintiff, was not the owner, nor entitled to the possession of the lands in suit, and until the defend-

ant so prove the finding of the court should be for the plaintiff."

From the judgment against him the plaintiff has appealed to this court.

### OPINION.

I.   There is no doubt of the power of a court of record when proceeding upon a proper basis of facts, such facts consisting of something of record or among the files of the court to amend by, to make corrections *nunc pro tunc* in order to make the record show just what was actually done.   The power to make such corrections is a power inherent in every court of record, and is wholly outside of any statute.   The power thus to correct clerical mistakes and misprisions is of daily occurrence, and it seems that no limit in point of time has ever been placed upon its exercise; in one instance, a decree was entered *nunc pro tunc* after the lapse of twenty-three years.   Daniel on Chancery Practice, 1219.

It is obvious, in this instance, that a mistake occurred in the description of the land, if we are to assume that the interlocutory decree in partition was correct.   Aside from that decree it is equally obvious that a mistake occurred in the subsequent descriptions of that land, because, whenever you say the south half of the north*west* quarter, and the south*east* quarter of the north*west* quarter of section 14, you thereby describe but *one* eighty of land; whereas, if you say the south half of the north*east* quarter and the southeast quarter of the northwest quarter of section 14, you thereby describe one hundred and twenty acres of land; and this quantity is all the land in section 14 that is mentioned in the interlocutory decree.   So that, if that decree is to be relied on, the recorded report of the

commissioners and the original decree in partition based thereon only describes *one* forty of the land described in the interlocutory decree, and that, too, by a double description, such as should at once attract attention, and show that a mistake must have been made.

It does not appear that the decedent, William J. Groomer, had any other lands than those mentioned in the interlocutory decree, some seven hundred acres, nor does it appear from the bill of exceptions *what* lands, nor *how* described, were described in the various mesne conveyances heretofore mentioned, except that the deeds of some of the various other heirs convey all their "right, title, interest and estate in and to all the land in controversy in this suit, together with other lands belonging to the said William J. Groomer at the time of his death" This expression is used some four times in stating in the bill of exceptions what lands these mesne conveyances purported to convey. In the fifth conveyance, however, Richard Groomer and wife conveyed to Christopher Groomer "their undivided one-sixth title, interest and estate in and to all the lands in suit, together with other lands belonging to said William J. Groomer at the time of his death." The sixth conveyance conveys to Simon Jones "all the lands in suit," and, by the seventh conveyance of Simon Jones and wife, convey to Sampson F. Jones "all the land in suit," and the eighth conveyance to Wilson, the trustee, contains a similar description, and the ninth conveyance to the plaintiff uses similar language. Regularly, there can be but one judgment for partition, and that must settle the rights of all the parties to the proceedings. *Post v. Post,* 65 Barb. 192. And, if we may assume that all the lands of the decedent were embraced in the interlocutory decree, something which would seem to be an inference in accord with the usual course of things, then it must follow that plaintiff, in

deraigning his title, must look to, and rely upon, the proceedings in partition, because those would constitute one of his muniments of title (Anderson's Law Dictionary, 692; Black's Law Dictionary, 794; *Brown v. Buena Vista Co.*, 95 U. S. 157), proceedings intimately connected with, and affecting, the title to the land in controversy.

Now, the general rule is that if a party cannot make out a title but by a deed or other instrument which leads him to the knowledge of another fact, he shall be deemed to have knowledge of that fact. *Hagerman v. Sutton*, 91 Mo., *loc. cit.* 533, and cases cited.

"In regard to the extent to which a purchaser is bound by constructive notice, and what a purchaser by a subsequent deed is presumed to know, the rule is, that the law imputes to such purchaser a knowledge of all facts relating to the same land appearing at the time of his purchase upon the muniments of title which it was necessary for him to inspect in order to ascertain the sufficiency of such title.   *   *   *   What would be constructive notice in such cases may be said to be a knowledge by the purchaser of some facts which would put him upon inquiry, and require him to examine other matters that would generally unfold the true title." 3 Washburn on Real Property [5 Ed.] pp. 347, 348.

If, pursuing the inquiry which he ought to have pursued, the plaintiff saw the original decree in partition, the tautological expression aforesaid must at once have arrested his attention, and have shown him that a mistake had been made, and looking further he would have encountered the interlocutory decree which would have abundantly confirmed the theory of a clerical mistake or misprision having happened. Instances

of correcting formal inaccuracies in partition proceedings are frequently met with in the books. Freeman on Cotenancy & Partition [2 Ed.] sec. 526; 2 Van Santvoord's Equity Practice [3 Ed.] 47; *Manners v. Charlesworth*, 1 My. & Keen, 334.

In *Baker v. Daniel*, 6 Taunt. 193, after final judgment in partition was entered, the court, proceeding on the theory of the correctness of the interlocutory judgment, did not quash the return nor award a new writ of inquiry, but upon motion made for that purpose amended the count in partition, writ to the sheriff and his return, by striking out the words of limitation so as to show an estate in fee. And the interlocutory judgment or decree in partition is that which settles and determines that partition be made between the parties litigant, and determines the extent of the interest of each party in the land, and in what land and in what proportions the division shall be made. Freeman on Cotenancy & Partition [2 Ed.] secs. 516, 517.

And where partition has been made as ordered and reported an inchoate right of property is raised, which the subsequent judgment of confirmation perfects. Freeman on Cotenancy & Partition [2 Ed.] sec. 527.

The interlocutory judgment constitutes part and parcel of the judgment roll (Freeman on Judgments [2 Ed.] sec. 84), and is the chart and the only chart by which the commissioners are authorized to act, and consequently it will be presumed that they acted in conformity with the directions therein contained, and not otherwise; and further that the description of the land as found in the final decree, in so far as it differed from the interlocutory decree, was but a *clerical mistake*. *Agan v. Shannon*, 103 Mo. *loc. cit.* 665.

Such presumptions have been indulged by this court as to the occurrence of important dates being the

result of clerical mistakes. *Jones v. Manly*, 58 Mo. 559; *Price v. Real-Estate Ass'n*, 101 Mo. 107. And the difference as to the land in controversy between the description contained in the interlocutory decree and in the final one is so obvious and so irreconcilable, and the description of the land as contained in the final decree is so inconsistent and at variance with itself, as to leave no room to doubt of a mistake having occurred. Again, as already stated, it does not appear from the bill of exceptions *just what was* the description of the land contained in the various mesne convey- ances under which plaintiff claimed. For aught that appears therefrom there may have been something in the deeds themselves that gave some intimation of the partition proceedings having taken place. And, in order to convict the lower court of error, there must be some sufficient evidence of it; it will not do to rely upon surmise or conjecture of error having been committed, since every presumption favors the correctness of judi- cial action.

Taking all these things into consideration, it should be held that plaintiff, or those under whom he claims, were necessarily driven to an examination of the proceedings in partition, and that such examination would necessarily have resulted in putting him on inquiry as to the defendant's title; and this was tanta- mount to notice. Indeed, it is scarcely possible of belief that so large an estate could have been parti- tioned, and plaintiff and those under whom he claims have remained in ignorance of the fact. Such an occur- rence would have been well known, not to say noto- rious throughout the county, and this would be some evidence of notice.

II. Regularly, those under whom plaintiff claims should have been notified by the defendant of the pendency of the motion to make the correction entry.

*Coe v. Ritter*, 86 Mo. 277; *McClannahan v. Smith*, 76 Mo. 428. But owing to reasons already given it is not thought that such lack of notice is an essential feature in this case. Besides, it is usual where the court proceeds solely upon matters of record to proceed *ex parte.* Freeman on Judgments [2 Ed.] sec. 64; *Fugua v. Carriel*, 1 Minor, 170; *Stokes v. Shannon*, 55 Miss. 583; *Nabers' Adm'r v. Meredith*, 67 Ala. 333; *Estate of Cook*, 11 Am. St. Rep. 267.

The object of the notification is to enable the party notified to satisfy the court that no correction should be made, a thing which in the then state of the record would have been wholly impossible to do. The entry requiring correction, at best, was but a formal inaccuracy, which the court of its own motion could have corrected. Freeman on Judgments, *supra.* In any event, therefore, the making of the correction could not have worked. the plaintiff nor those under whom he claims any hurt; it did not, and could not, change their legal rights and status in any respect.

III., Moreover, plaintiff being privy in estate with the other heirs of William J. Groomer, certainly no one of them could claim any of the land described except through the partition proceedings, and whatever would estop them would estop him. 1 Greenleaf on Evidence [14 Ed.] sec. 523; Bigelow on Estoppel [5 Ed.] 341, *et seq.*, and cases cited.

The declaration of law given at the instance of the plaintiff and the one refused him have been sufficiently discussed in the foregoing observations, and upon the whole record the judgment should be affirmed. All concur, except BARCLAY, J., absent.