METZ, Appellant-Respondent, v. WRIGHT et al., Respondents-Appellants.

**St. Louis Court of Appeals, February 13, 1906**

1. **WILLS: Construction: Intention.** In construing a will, effect should be given to the attention of the testator, and technical rules of construction, when they stand in the way of the manifest intention of the testator, may be disregarded.

2. ———: ———: ———: **Past Tense.** Where a will provided: "My son, Asbury W. Rose, I have given," a certain tract of land, the intention to devise the land to the son was manifest

and the clause should be given that effect, although it was expressed in the past tense and the word "devise" was not used.

3. ———: ———: Res Judicata. The construction given a will in a proceeding to partition the land devised, to which proceeding all the testator's heirs were parties, is conclusive.

3. PROBATE COURTS: Curators: Sale of Real Estate: Correcting Clerical Errors. Where land was sold by a curator under proper order, by correct description, of the probate court, but the appraisement, the order approving the sale and the curator's deed, misdescribed the land, the misdescriptions were clerical errors, and it is within the power of the probate court at a subsequent term to make an order correcting its error, and it was proper for the appraisers and the curator to correct their errors, in the description.

4. LAND TITLES: Patent. Where one acquiring government land complies with all the requisites necessary to entitle him to a patent for it, he is regarded as the equitable owner.

5. VENDOR AND PURCHASER: Land Titles. A purchaser of land has a right to demand a title which will protect him from anxiety, and where a title is tendered such that no one has a shadow of right to disturb his peace in its possession, he cannot refuse to comply with his contract of purchase.

6. ———: Time the. Essence of Contract: Waiver. Where time was of the essence of a contract for the purchase of land, the purchaser waived it by calling for additional proof of title after the time limit had expired, and formal notice to the vendor terminating the contract at a subsequent date.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

REVERSED.

*J. O. Barrow* and *P. H. Cullen* for appellant.

(1) The court may at any time correct a clerical error. Ross v. Ross, 83 Mo. 102; Coop v. Northcutt, 54 Mo. 129; Laxton v. Smith, 50 Mo. 490; Priest v. Masters, 52 Mo. 61; Turner v. Christie, 50 Mo. 147; Allen v. Sales,

56 Mo. 28. (2) It is the policy of the law to uphold judicial sales and look with leniency in minor irregularities. Jones v. Manly, 58 Mo. 559. (3) When the description in an administrator's report of sale differs from the description in the order of sale it will be presumed to be a clerical error. Agan v. Shannon, 103 Mo. 661, 15 S. W. 757; Loring v. Gromer, 110 Mo. 632, 19 S. W. 950; Mitchener v. Holmes, 117 Mo. 209, 22 S. W. 1070; Thompson v. Thompson, 115 Mo. 57, 21 S. W. 1085, 1128. (4) A marketable title is one which a reasonable purchaser, well informed as to the facts and their legal bearing, willing and anxious to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear upon such transactions, be willing to accept and ought to accept. The doubt must be such as affects the value of the land or will interfere with its sale. Mathematical certainty is not required. Todd v. Union Dime Sav. Inst., 128 N. Y. 639; Atkinson v. Taylor, 34 Mo. App. 452. (5) Such defects as the ones complained of by plaintiff in the description do not render the title unmarketable. Mitchener v. Holmes, 117 Mo. 185. (6) There is no implied covenant in a contract of sale that the title will be such as the vendee may be willing to accept or that his attorney may pronounce good and marketable. Green v. Ditsch, 143 Mo. 12, 44 S. W. 799. (7) The will of Robert Rose manifests a clear intention that testator desired to vest title to 120 acres of land in Asbury Rose, and charge it to him as an advancement in the sum of $600. The will describes the land. The partition proceedings is based on the will, recites the advancement of real estate charged in the will, deducts it from Asbury's share of the estate, and all the heirs being parties to the partition proceedings, the clear effect of the judgment is to vest in Asbury W. Rose an unquestionably good record title to the land in controversy. Allison v. Chaney, 63 Mo. 279; Nichols v. Boswell, 103 Mo. 151, 15 S. W. 343; Cochran v. Thomas, 131 Mo. 258, 33 S. W. 6; Lindell R.

E. Co. v. Lindell, 142 Mo. 61, 43 S. W. 368. (8) It is sufficient if defendants had good title any time before judgment. That the title could have been made marketable does not admit of doubt, and when plaintiff refused to take the title, even if made perfect, he committed the first breach and cannot recover. Scannel v. Soda Fountain Co., 161 Mo. 621, 61 S. W. 889; Luckett v. Williamson, 37 Mo. 395; Isaacs v. Skrainka, 95 Mo. 524, 8 S. W. 427; Baldwin v. Salter, 9 Paige 473; Oakey v. Cook, 41 N. J. Eq. 364; Jenkins v. Fahey, 73 N. Y. 355; Dressell v. Jordan, 104 Mass. 416. (9) The failure to show the issuance and recording of a patent did not render the title unmarketable. The certificate of entry was sufficient. R. S. 1899, sec. 3054; Wirth v. Branson, 98 U. S. 121.

*Fry & Rodgers* for respondent.

(1) Appellant contracted to furnish plaintiff an abstract "showing good and merchantable title." A title which is doubtful or non-marketable is not a good title. "Every purchaser of land has a right to demand a title which shall protect him from anxiety, lest annoying if not successful suits be brought against him and probably take from him or his representatives, land upon which money was invested. He should have a title which would enable him not only to hold his land, but to hold it in peace, and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value." Waterman Specific Performance, sec. 412; Lucket v. Williamson, 31 Mo. 54; Mitchner v. Holmes, 117 Mo. 185, 22 S. W. 1070; Mastin v. Grimes, 88 Mo. 478; Green v. Ditsch, 143 Mo. 1, 44 S. W. 799; 1 Ballard on Real Property, sec. 430; 3 Ballard on Real Property, sec. 767; Bruce v. Wolfe, 102 Mo. App. 389, 76 S. W. 723; Constantine v. East, 35 N. E. 844. (2) The judgment and proceedings in the probate court were erroneous and not simply irregular. Therefore the pro-

bate court had no province to correct, modify or set aside the proceedings at a subsequent term. The proceeding therefore by Wm. L. Wright, agent, in 1903, did not correct the title. Orvis v. Elliott, 65 Mo. App. 96; Hall v. Lane, 123 Mo. 635, 27 S. W. 546.

BLAND, P. J.—Plaintiff Metz and defendant Wright entered into the following articles of agreement:

"Articles of agreement made this seventeenth day of October, 1903, by and between W. L. Wright, agent, of Vandalia, Audrain county, State of Missouri, party of the first part and A. H. Metz, of Forrest, Livingston county, State of Illinois, party of the second part.

"Witnesseth that the said party of the first part, in consideration of the promises and agreements of the said party of the second part hereinafter contained hereby agrees to convey to said party of second part by general warranty deed with dower of his wife relinquished, properly acknowledged, the following described real estate, situated in the county of Ralls, and State of Missouri, to-wit:

"The east half of south one-half northwest and the east one-half of southwest quarter of section 15, townships 53-5.

"Said conveyance to be subjected to right of way of all public roads as they are now located, subject also to the taxes for the year of 1904, which the said party of the second part agrees to pay, said deed to be executed contemporaneously with this agreement and placed in escrow with Missouri Land Co., or F. & M. Bank of Vandalia, Missouri.

"The said party of the second part, in consideration of said conveyance, has this day paid to said party of the first part the sum of ——— dollars ($———), the receipt of which is hereby acknowledged, and agrees to pay as additional consideration the further sum of five hundred dollars ($500), on the first day of March, 1904, and his stock of groceries at Forrest, Ill., said stock to

be invoiced at market value and five per cent added for carriage, fixtures at their market value and the balance of purchase price of $5,400, by trust deed on said land at five per cent.

"Said party of the first part agrees to furnish to the party of the second part an abstract of the title of said real estate on or before March 1, 1904, showing good and merchantable title, certified to by competent abstracters and shall surrender and give possession on the first day of March, 1904, possession to be delivered by said first party to second party in as good order and repair as same now are, usual and ordinary wear and tear, and unavoidable accident by fire or otherwise or providential destruction only except——. Said first party to keep buildings on said premises insured until possession is turned over to said second party.

"It is mutually agreed by and between the parties hereto that time shall be an essential part of this contract, and that all the stipulation and covenants herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties.

"Witness the hands and seals of the said parties on the day and year first above written.

"Purchase price $5,400.    Cash March 1st, $500. Grocery stock to be invoiced soon as title to land is established.    Balance trust deed on said land to bear interest from March 1, 1904.

(Seal.)                              "W. L. WRIGHT.
(Seal.)                              "A. H. METZ.

"First party to pay for insurance at $2.00 per month for unexpired term and to allow interest at rate of five percent per annum for amount over $500 the the grocery stock invoices."

On November 9, 1903, plaintiff and defendant made the following supplemental agreement:

"It is hereby agreed that if first party cannot get a correct abstract or deed from Dunbar, guardian to

southeast of northwest quarter 15-53-5, that first party shall have time to take the matter through the Missouri probate or circuit court by giving bond for the amount of the purchase price of said land, limited to April 20, 1904, for completion.

"W. L. WRIGHT,
"A. H. METZ."

In compliance with the supplemental agreement, Wright, as principal, and the other defendants, as sureties, executed and delivered to plaintiff the following bond:

"November 9, 1903.

### BOND IN TRUST.

"Know all men by these presents, that we, W. L. Wright and C. B. Ellis, of Vandalia, Mo., as principal, and F. B. Detienne, as security, acknowledge ourselves indebted to Mr. A. H. Metz, of Forrest, Ill., in the sum of three thousand dollars, for the payment whereof we bind ourselves, our heirs, executors and administrators.

"The condition of the above obligation, that whereas the said W. L. Wright and C. B. Ellis, of Vandalia, Mo., shall deliver to the said A. H. Metz, of Forrest, Ill., warranty deed and abstract showing good title in the party who deeds the land of the southeast one-fourth of the northwest one-fourth and the east half of the southwest one-fourth all in section fifteen (15), township fifty-three (53), range five (5), west, Ralls county, Missouri, containing one hundred and twenty acres (120) more or less according to U. S. survey, and whereas in failure to comply with the above condition we, W. L. Wright and C. B. Ellis, of Vandalia, Mo., shall turn over to said A. H. Metz, of Forrest, Ill., the amount equivalent to their stock of merchandise as will be invoiced on November 9, 1903.

"In case of failure of A. H. Metz to comply with contract made and entered into by and between W. L. Wright, party of the first part, and A. H. Metz, party of

the second part, on Oct. ——, 1903, the above obligation
will be null and void.

"Time for completion limited to April 20, 1904.

"W. L. WRIGHT,

"C. B. ELLIS,

"F. B. DETIENNE."

On November 11, 1903, an inventory was made of
plaintiff's stock of goods in Illinois, as provided for in the
contract, and the value agreed upon, as shown by the
following indorsement on the back of the original con-
tract:

"Forrest Hill, Ill., Nov. 11, 1903.

"Inventory of grocery stock, $1020. Carriage 5 per
cent on grocery stock, $51. Fixtures, $246. Unexpired
insurance, $14. Interest on amount over $500, $11.
Total amount credited on with contract, $1,342.

"W. L. WRIGHT,

"A. H. METZ."

The goods were delivered to Wright and he disposed
of them. Wright was unable to furnish an abstract of
title to the lands, satisfactory to the plaintiff, and the
suit is on the bond to recover the agreed value of the
goods.

The answer alleged a compliance with the terms of
the contract, and also stated that extensions of
the time, in which the contract might be performed, had
been made from time to time, and stated a readiness on
the part of Wright to remove any real or apparent de-
fects in the title to the lands.

The abstract as first submitted was certified on Oc-
tober 20, 1903. A supplemental abstract from Pike
county, beginning with the last will of Robert Rose, of
said county, certified by the abstracter and the judge of
the probate court, was furnished Herbert Powell, Esq.,
plaintiff's attorney, who made certain objections and the
abstract was again extended on March 25, 1904. On
April 16, 1904, plaintiff submitted the abstract and ex-
tension to Messrs. Fry and Rodgers, of Mexico, Missouri,

who gave an opinion in which certain additional evidence of title was called for, and special objections to proceedings had in the Ralls County Probate Court, resulting in a sale of the lands by a curator, were made. A further extension of the abstract was made and delivered to plaintiff, on May 18, 1904, and on May twenty-eighth, Wright wrote Powell as follows:

Vandalia, Mo., May 28th.

"Friend Powell: Your letter to hand and will say that I am sorry that the abstract does not meet with your approval. We have done several things that we did not think necessary and further desire to make everything as agreeable as possible to all concerned, and if you will name the parties that you deem necessary defendants to perfect this title we will bring suit in the circuit court to perfect same and proceed at once.

"Thanking you for past favors,

"I am very truly,

"W. L. WRIGHT."

On May thirty-first, Powell, as attorney for plaintiff, wrote Wright that he (Powell) understood that Metz would not accept the title.   On June twentieth, Metz wrote Wright as follows:

"Forrest, Ill., June 20, 1904.

"W. L. Wright,

"Vandalia, Mo.

"You will please take notice that I elect to terminate the contract of date October 17, 1903, and the several extensions thereof existing heretofore between us, for failure on your part to comply with its terms, and I further demand return to me at once of all consideration advanced by me under the terms of said contract and likewise under and in accordance with the bond of date Nov. 9, 1903, executed by you, C. B. Ellis and F. B. Detienne.

"Yours respectfully,

"A. H. METZ.

"Fairbury, Ill., June 20, 1904.
"W. L. Wright,
    "Vandalia, Mo.

"Dear Sir: Your letter of June 18th is received and contents noted. You have nothing on which to base your action taken, since you were informed that the title was not approved or acceptable. To save all further question I enclose formal termination and demand. I trust you will see your way clear to comply with it, as you had given me to understand you would do, and so save trouble and expense for both of us.

"Yours, etc.,
        "A. H. METZ."

Before this suit was commenced, Wright offered to bring suit in the Ralls Circuit Court to quiet the title, or to take any other proper proceedings to remove the objections raised by plaintiff to the abstract.

The abstract shows that the plat book on file in Ralls county shows that the lands were entered by Robert Rose on August 22, 1852. Robert Rose's last will contains the following clause:

"My son, Asbury W. Rose, I have given one colt at one hundred dollars, bridle and saddle at twenty dollars, and one hundred and twenty acres of land, priced at six hundred dollars, known by the following numbers: West half of northwest quarter and southeast fourth of northwest quarter of section 15, township 53, range 5, west. I wish him to have fifty-two dollars in property to make him equal in property to the above-named heirs."

1. If Asbury Rose acquired title under the will, his title passed by mesne conveyance to Thomas Dunbar, who died August 10, 1897, intestate, leaving a widow, Ella H., and a minor child, Mary E. Dunbar. Ella J. Dunbar, as curator of Mary E. Dunbar, by virtue of proceedings had in the probate court of Ralls county, on February 13, 1900, made a deed conveying the east

half of the southwest quarter and the southeast quarter of the northeast quarter of section 15, township 53, range 5, to Frazier Rose. Plaintiff objected to the abstract on account of the misdescription of forty acres of the lands in the curator's deed, and on account of the insufficiency of the clause quoted from Robert Rose's will to devise the lands to Asbury Rose. The word "devise" is the proper word to use in a testamentary disposition of real estate. This word is not found in the will, but a devise exists, by implication, when the testator uses words manifesting an intention to give, by so strong a probability that the contrary intent cannot be supposed to have existed in his mind when he made the will. [Hanneman v. Richter, 50 Atl. l. c. 906; s. c. 62 N. J. Eq. 365. The rule is, in construing a will, that effect is to be given to the intention of the testator as disclosed by said instrument. [Crecelius v. Horst, 78 Mo. 566; Small v. Field, 102 Mo. 104, 14 S. W. 815; Briant v. Garrison, 150 Mo. 655, 52 S. W. 361; Zimmerman v. Hafer, 32 Atl. 316.] And technical rules of construction, when they stand in the way of the manifest intent of the testator, may be disregarded. [Suydam v. Thayer, 94 Mo. 49, 6 S. W. 502.] In the disposition made of the lands, the testator used the past tense of the word give instead of the present, indicating that he had theretofore conveyed the lands to his son Asbury, when in truth and in fact he had not done so; but, nevertheless, we think his intention was that his son Asbury should have the lands, paying therefor the sum of six hundred dollars, and conclude that the clause of the will in question should be construed as devising the lands to Asbury W. Rose. But if there should be any doubt about the construction of this clause of the will, it was adjudicated to have the effect to devise the lands to Asbury Rose, in a decree of the circuit court of Pike county, rendered at the April term, 1865, thereof, in a partition suit to which all the heirs at law of Robert Rose were parties, and we conclude that the objection to the abstract on account of the

116 App—41

want of title to the lands in Asbury W. Rose, as devisee of Robert Rose, is without merit.

2. Ella J. Dunbar administered on her husband's estate. In her inventory of the estate the lands are correctly described as the east half of the southwest quarter and the southeast quarter of the northwest quarter, section 15, township 53, range 5, west, incumbered by a deed of trust executed by Thomas W. Dunbar, her deceased husband, to D. D. Rose, amounting to fourteen hundred dollars. After the administration was closed she was appointed curator of her minor child and as such petitioned the probate court for an order to sell the interest of her ward in the lands, correctly describing the same in her petition. The order for the sale also correctly described the lands, but the appraisers, appointed by the probate court to appraise the lands, misdescribed the same in their certificate of appraisement and this error was carried forward in the curator's deed, and in the order of the probate court approving the sale. These proceedings were had in 1899. After the discovery of the misdescription of the lands in the curator's deed, etc., Wright, through his counsel, filed a petition in the probate court of Ralls county, praying the court to correct the error on its record approving the sale, and that the appraisers be allowed to correct the error in their certificate of appraisement, and that the curator be ordered to make a correct deed. The petition was heard and, on February 11, 1903, the court made the following entry upon its records:

"In the matter of the estate of Mary E. Dunbar, a minor, Ella J. Dunbar, curator:

"Now, on this eleventh day of February, 1903, comes William L. Wright, agent, of Frazier Rose, by his attorney, J. O. Barrow, and presents to the court his petition, praying the court for an order requiring L. Ragland, J. T. Riney and W. B. Ragland to appear in court and file their corrected certificate of appraisement of certain real estate in said petition described and belong-

ing to said Mary E. Dunbar, minor, and for a further or-
der requiring the said Ella J. Dunbar, curator afore-
said, to execute and deliver to the said Frazier Rose her
corrected curator's deed conveying to him, the said
Frazier Rose, all of the interest of the said Mary E. Dun-
bar, minor aforesaid, to said real estate, and in said pe-
tition described as follows, to-wit: The southeast fourth
of the northwest quarter and the east half of the south-
west quarter, all in section fifteen (15) township fifty-
three (53), range five (5) west, in Ralls county, Mis-
souri, and for a further order of this court correcting its
record approving the sale of said real estate to conform
with the facts in the premises, and as in said petition
set out, and said petition is ordered filed, and the mat-
ers and things relating thereto, coming on to be heard,
and the court hearing the evidence in relation thereto
and duly considering of the same finds that at its Novem-
ber term, to-wit: on December 13, 1899, that said Ella J.
Dunbar, the curator aforesaid, filed with the court her
curator's petition, praying the court to make an order
empowering her as such curator to sell at private sale all
the interest of her said ward, the said Mary E. Dunbar,
in and to certain real estate in said petition described, and
that in pursuance with the prayer of said petition, this
court did at its November term, to-wit: on December 13,
1899, make an order of record authorizing and empower-
ing her as such curator to sell at private sale the land
described in said petition as follows, to-wit: The south-
east fourth of the northwest quarter and the east half
of the southwest quarter, all in section fifteen (15)
township fifty-three (53) range five (5) west, in Ralls
county, Missouri, and the court further finds that the
said L. Ragland, J. T. Riney and W. B. Ragland, three
disinterested householders of Ralls county, Missouri,
were appointed as appraisers by the said curator, and
being duly qualified as appraisers and did view and ap-
praise said land at the sum of $2,100, and the court fur-
ther finds that the said appraisers returned into this

court their certificate of appraisement by which it is shown that they appraised the east one-half of the southwest quarter and the southeast of the northeast quarter of section fifteen (15) township fifty-three (53) range five (5) west, Ralls county, Missouri, and that said description was an error, wherefore it is considered, ordered and adjudged that the said L. Ragland, J. T. Riney and W. B. Ragland, appraisers aforesaid, appear in court and file herein their corrected certificate of appraisement of said land, to-wit: The southeast fourth of the northwest quarter and the east half of the southwest quarter, all in section fifteen (15) township fifty-three (53) range five (5) west, in Ralls county, Missouri; and the court further finds that the said curator did, at the February term, 1900, to-wit on the thirteenth day of February, 1900, present to this court her report of the sale of the real estate belonging to the estate of the said Mary E. Dunbar, minor aforesaid, and in said report described as follows to-wit: The southeast fourth of the northwest quarter and the east half of the southwest quarter, all in section fifteen (15) township fifty-three (53) range five (5) west, in Ralls county, Missouri; and the court further finds that in its order of approval of said report of sale described therein said land as follows, to-wit: The east one-half of the southwest quarter and the southeast one-fourth of the south one-fourth, in section fifteen (15) township fifty-three (53) range five (5) west, in Ralls county, Missouri, and that said description was incorrect, and that the land actually sold and the sale which was intended to be approved by said order, was the following land, to-wit: The southeast one-fourth of the northwest one-fourth and the east one-half of the southwest one-fourth, all in section fifteen (15) township fifty-three (53) range five (5) west, in Ralls county, Missouri; wherefore the court doth now correct its order, approving the aforesaid report of the sale of the real estate belonging to the said Mary E. Dunbar, minor aforesaid, and in said report described as follows,

to-wit:. The southeast one-fourth of the northwest one-fourth and the east one-half of the southwest one-fourth, all in section fifteen (15) township fifty-three (53) range five (5) west, in Ralls county, Missouri to conform with the facts and finding herein set out and as in said petition prayed for, and it is further ordered that the said Ella J. Dunbar, curator aforesaid, do now execute and deliver to the said Frazier Rose, her corrected curator's deed, conveying to him all the right, title and interest of said Mary E. Dunbar, minor aforesaid, in and to the real estate in the petition, the order of sale and the report of sale herein referred to and described as follows, to-wit: The southeast one-fourth of the northwest one-fourth and the east one-half of the southwest one-fourth, all in section fifteen (15), township fifty-three (53), range five (5) west, in Ralls county, Missouri."

The appraisers made the following certificate of appraisement, on November 4, 1903.

### "APPRAISEMENT.

"Appraisement of all the real estate belonging to the estate of Thomas M. Dunbar, Mary E. Dunbar, minor, under the age of three years, of Ralls county, Missouri, produced before the undersigned L. T. Ragland, J. T. Riney and W. B. Ragland, appraisers, duly qualified, this twenty-sixth day of December, A. D. 1899, by Ella J. Dunbar, guardian of said minor.

"DESCRIPTION OF PROPERTY—APPRAISED VALUE.

"The southeast fourth of the northeast quarter and the east half of the southwest quarter, all in section fifteen, of township fifty-three, in range five west, containing 120 acres, more or less, according to U. S. Survey in Ralls county, Mo., $2,700.00.

"Total amount of appraisement, $2,700.00.

"We, the undersigned appraisers, certify the above to be a full and fair appraisement of the real estate of the estate of Thomas M. Dunbar, Mary E. Dunbar,

minor, as produced before us by Ella J. Dunbar, guardian of said minor.

"Given under our hands this fourth day of November, A. D. 1903.

> "J. T. RINEY,
> "W. B. RAGLAND,
> "L. T. RAGLAND,
> Appraisers."

On March 25, 1904, Ella J. Dunbar, as curator of the estate of Mary E. Dunbar, made a deed conveying the southeast quarter of the northwest quarter and the east half of the southwest quarter of section 15, township 53, range 5, west, to Frazier Rose, in consideration of $457.37.

Plaintiff was advised by his counsel that the probate court was without jurisdiction to make the order correcting the mistake in the description of the lands, and that the deed of March 25, 1904, made by Ella J. Dunbar, as curator, was ineffectual to convey title to Rose. The contention of defendants is that the misdescription of the lands above noted are mere clerical errors and the court had the right at any time to correct the errors.

In Agan v. Shannon, 103 Mo. 661, 15 S. W. 757, it is said: "It will be presumed that the administrator committed a clerical error in inserting a wrong description of land in his report of sale and deed, where the description differs from that contained in the order of sale."

In Loring v. Groomer, 110 Mo. 632, 19 S. W. 950, it was held: "An interlocutory judgment in partition is the commissioners' authority to act, and it will be presumed they acted in accordance with it, and that any variance in the description of the land between it and the final decree is a clerical error."

The order of the probate court for the sale of the land was equivalent to a judgment. It furnished the appraisers a correct description of the lands, and the wrong description made in their certificate of appraise-

ment must be presumed to be a clerical error. This error was copied into the court's order approving the sale, and in the curator's deed. These errors were all clerical and it was clearly within the power of the court and the parties to make the corrections they did make. [Ross v. Ross, 83 Mo. l. c. 102; Weeke v. Senden, 54 Mo. 128; Allen v. Sales, 56 Mo. 28; Turner v. Christy, 50 Mo. l. c. 146.] We conclude that the objection to the Dunbar title is without merit.

3. In an early stage of the correspondence between the attorneys of Metz and Wright in regard to the abstract, Metz's attorney called attention to the fact that it failed to show the issuance and recording of the patent, and suggested that a patent or copy be procured and recorded. No attention was paid to this suggestion, and the objection, if it was an objection, was not again alluded to in the subsequent correspondence. By section 3054, R. S. 1899, an entry under the land laws of the United States is sufficient to maintain an action of ejectment.

In Wirth v. Branson, 98 U. S. l. c. 121, the court, in respect to entries of the public lands, said: "The rule is well settled, by a long course of decisions, that when public lands have been surveyed and placed in the market, or otherwise opened to private acquisition, a person who complies with all the requisites necessary to entitle him to a patent in a particular lot or tract is to be regarded as the equitable owner thereof, and the land is no longer open to location. The public faith has become pledged to him, and any subsequent grant of the same land to another party is void, unless the first location or entry be vacated and set aside."

The abstract shows the recording and satisfaction of a number of deeds of trust on the lands. Some objections were made in respect to the marginal entries of the satisfaction of some of these deeds, and also to deeds of release of some of these mortgages. The presumption is that they were made in compliance with the law, and,

nothing to the contrary appearing considering the length of time since these satisfactions have been entered of record and remained undisturbed, we think the objections are frivolous.

4.  Plaintiff is entitled to a merchantable title. Did Wright offer him a deed conveying such a title? Waterman on Specific Performance, section 412, says:

"Every purchaser of land has a right to demand a title which shall protect him from anxiety, lest annoying, if not successful suits, be brought against him, and probably take from him, or his representatives, land upon which money was invested. He should have a title which would enable him not only to hold his land, but to hold it in peace, and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value."

This section is approvingly quoted in Mastin v. Grimes, 88 Mo. l. c. 490, and in Mitchner v. Holmes, 117 Mo. l. c. 205, 22 S. W. 1070. It cannot be seen from the abstract that any one has a shadow of a right to disturb the peace of Metz in the possession of the lands, should he carry out his contract and accept the conveyance tendered him by Meyers, and there is no flaw in the title, that we can see, that will in the least disturb the market value of the land.

A good deal was said on the oral argument to the effect that time was of the essence of the contract and that the defects, or apparent defects, in the title, in respect to the satisfaction of unsatisfied mortgages and the identification of parties to certain conveyances, were not removed until after the expiration of the time limited by the supplemental contract for the completion of the abstract, April 20, 1904. If time was of the essence of the contract, and we think it was, the evidence is conclusive that Metz waived performance within the time limited by calling on Wright for additional proofs, etc., after April 20, 1904. His letter of June 20, 1904, shows that he did not consider the contract at an end until he

gave Wright formal notice terminating it on that day. The abstracts and proofs of identity of persons, etc., were all made and furnished plaintiff, or his attorney, prior to June 20, 1904. A good and sufficient deed containing the usual covenants of warranty was also tendered him prior to that date, and we think he was obliged, under the terms of his agreement, to accept the deed and complete the contract, wherefore, the judgment is reversed.

All concur.