MEXICO REFRACTORIES COMPANY, A CORPORATION, APPELLANT, v. STANTON C. ROBERTS, RESPONDENT.—167 S. W. (2d) 660.

Kansas City Court of Appeals. December 7, 1942.

300

*Fry & Edwards* for appellant.

*Orlando A. Mundwiller* and *John P. Peters* for respondent.

CAVE, J.—This is an appeal from a judgment of the Circuit Court of Osage County, which judgment made permanent in part a temporary injunction previously issued.

The appellant (plaintiff) sought to enjoin the respondent (defendant) from removing fire clay already mined and also from mining fire clay from a certain clay pit. The trial court dissolved the injunction as to that part of the clay pit not covered by the metes and bounds description of appellant's deed, but made permanent the injunction as to the land described in the deed and as to clay already mined and in a certain stock pile.

The appeal was granted to the Supreme Court on the theory that title to real estate was involved and the value of the fire clay was in excess of $7500; but the Supreme Court held that the title to real estate was only incidentally or collaterally involved, and that the value of the fire clay was less than $7500, and therefore, it had no jurisdiction, and transferred the cause to this court, under authority of State ex rel. Brown v. Hughes et al., 137 S. W. (2d) 544, and cases cited therein.

Since the Supreme Court has held that title to real estate is not directly involved, it will not be necessary for us to consider and discuss some of the points raised in the original briefs at the time the cause was pending in the Supreme Court. By its petition, the appellant sought to enjoin and restrain respondent from mining and removing fire clay on or under the surface of the following described lands in Osage County, to-wit: ''A certain fire clay mine situated in the Northeast corner of the Northeast Quarter of the Northeast Quarter of Section twenty-one (21), Township Forty-three (43), Range eight (8),'' and to further enjoin respondent from removing fire clays from a certain stock pile located on said above described property. The Judge of the Circuit Court of Osage County, in vacation, made an order allowing temporary injunction as prayed for. Respondent filed answer denying each and every allegation of appellant's petition, and further alleged that appellant had secured a deed to a certain tract of ground described by exact metes and bounds, and lying and situate near the northeast corner of the above described real estate; and that thereafter, respondent had leased the whole tract of ground except that part which was included in the metes and bounds description contained in the deed to the appellant. The record does not disclose the filing of a reply to the answer, but the cause was tried as though a general denial had been filed, and we will so treat it.

On a trial of the cause on the merits, the court rendered judgment granting a permanent injunction in part and dissolving the temporary injunction in part, as above set out, and from that judgment the appellant (plaintiff) appealed, seeking to have the injunction made permanent to that part of the ''clay mine'' which was not located within the metes and bounds description in its deed.

The record discloses that one August Pignet, the common source of title, was the owner in fee of the whole of the northeast quarter of the northeast quarter of said Section 21; and that on August 7, 1934, he entered into a mining lease with one B. F. Ferrier whereby he leased to said Ferrier, his heirs and assigns, for a term of five years, ''a certain fire clay mine situated in the northeast corner of the northeast quarter of the northeast quarter of Section 21, Township 43, Range 8 west, being about one-eighth mile north and west of a certain fire clay pit on said premises heretofore mined by A. P. Green Fire Clay Company; and being pit heretofore drilled and prospected by the Lessee (Ferrier) herein, and now being mined by said Lessee. For the purpose of mining and removing therefrom all fire clay, diaspore, diasporite, burley flint and other aluminous clays and minerals.'' The lessor further granted to lessee the right to use so much of the surrounding lands as was necessary to efficiently carry on mining operations. A specified royalty was defined for different kinds of fire clay removed from the pits. It was further provided that the lessee at his option might purchase the fire clay mine aforesaid at any time

during the life of the lease upon payment of a certain sum for each ton of fire clay remaining in the mine. Thereafter, on August 21, 1934, Ferrier, the lessee, assigned this mining lease to appellant, and the lease and assignment were duly recorded in the Recorder's Office of Osage County. Appellant entered into possession of the leased lands and mined fire clays therefrom. Some of the products were taken away from the premises, while some were stock piled near the pit.

On March 24, 1938, the Probate Court of Osage County adjudged August Pignet to be a person of unsound mind, and his brother, Robert Pignet, was appointed guardian and curator of his estate. Some time prior to October, 1938, appellant notified Robert Pignet, guardian and curator, that it desired to exercise its option to purchase the fire clay mine as above mentioned, and pursuant to such request, the guardian filed a petition in the Probate Court of Osage County praying for an order directing him to comply with the terms of sale set forth in a certain lease and option which he described in his petition to the Probate Court as being "dated on the ———day of ———, 1933;" however, the terms and provisions of the lease and option as described in the guardian's petition were in all other respects similar to the terms and provisions of the lease and option dated August 7, 1934. The guardian's petition alleged that the unmined clay in the pit was of the agreed value of $2100, and that the agreed value of the clay which had been mined and piled on the surface of the land was $525, making a total of $2625.

In response to this petition, the Probate Court on October 17, 1938, found to be true the facts stated in said petition, an ordered the guardian to comply with the option contained in the lease and option "dated on the ———day of ———, 1933," and to convey to appellant the fire clay mine and the fire clays in said lease and option described. On the 20th day of October, 1938, in obedience to such order, the guardian and curator executed his deed conveying to the appellant all the fire clay, etc., being found on or under the surface of the following described land: "That part of the northeast quarter of the northeast quarter of Section 21, Township 43, Range 8 west, described as beginning at a point on the east line thereof 300 feet south of the northeast corner of said Forty; thence west 630 feet; thence south 360 feet; thence east 630 feet; thence north 360 feet, to place of beginning; . . ."

It is conceded that the land above described by metes and bounds did not include all of the clay pit or mine, and the portion of the pit or mine outside of the above metes and bounds description is the portion which the trial court eliminated from its judgment granting permanent injunction and is the portion which gives rise to the question for our consideration.

It appears from the record that Ferrier and Robert Pignet, sometime during the above probate court preceding, went to the location

of the clay mine to measure off the tract of land which would include the clay mine and sufficient surrounding land to enable the mining operations to be done effectively. They merely "stepped off" the land and entered on a piece of paper the number of steps from a certain point around the clay mine back to the point of beginning, and took the notation of their steps and measurements to the attorney for the guardian and curator, who prepared the deed accordingly, and it is now appellant's contention "that in setting down the steps or in transposing the figures, a mistake was made in the metes and bounds description contained in this guardian's deed and that the land contained in the metes and bounds description did not include all of the land sought to be conveyed." Upon the delivery of the deed, appellant paid the guardian the full purchase price and the deed was duly recorded in the Recorder's Office of Osage County.

Thereafter, August Pignet died, and on July 16, 1940, respondent Roberts secured a lease from the heirs of August Pignet granting to him the right to mine, operate and prospect for fire clays on "all that part of the north half of Section 21, Township 43, Range 8 west, 'not heretofore conveyed, leased, demised, or let to other parties,' which lies north of the old state road, containing 150 acres, more or less." This lease was to remain in force 'for a term not to exceed five years and provided for royalty for any fire clay removed and also contained an option to purchase. It was recorded in the recorder's office on August 21, 1940. After commencing to prospect for fire clay, Roberts discovered that part of the open clay pit in "the northeast corner of the northeast quarter of the northeast quarter" was situated outside of the metes and bounds description contained in the guardian's deed, and that certain of the stock piles were situated outside of such boundaries, and he immediately commenced moving the clays in such stock piles, which prompted the filing of this injunction suit.

Respondent Roberts testified in substance that he was an experienced mining engineer and had been engaged in the business of fire clay mining and prospecting since 1927; that Robert Pignet proposed to him to lease him the balance of the Pignet farm which had not been conveyed to appellant. He had seen this clay pit in operation in the summer of 1934, and that when he secured his lease he knew that the appellant owned a fire clay pit on the Pignet land. He made no examination of the records in the recorder's office until after he had taken his lease and option, but after he had gotten his lease and had done some drilling and prospecting, he got the metes and bounds description from the curator's deed and then made a survey of the land according to such metes and bounds description, and then discovered that a portion of the fire clay pit and the stock piles were outside of the metes and bounds description, and that he was claiming all rights to the fire clay outside of the metes and bounds description and had begun to remove the clay from the stock pile when this proceeding was filed.

Appellant contends that injunction is the proper remedy where fire clay is being taken from land, regardless of insolvency of trespasser, because of the irreparable damage to the land, while respondent contends that injunction is not the proper remedy because this is an effort to try and determine title to lands and minerals thereunder. But since the Supreme Court has held that this is not an action to try and determine title, we hold that injunction is the proper remedy. [Eaton v. Milbourn, 135 S. W. (2d) 387; Echelkamp v. Schrader, 45 Mo. 505; Nokol Company of Missouri v. Becker, 300 S. W. 1108.]

Appellant's principal contention is that where a deed makes reference to another deed or another written instrument, then such instrument to which reference is made becomes a part and parcel of the first instrument, and cites a number of authorities to support such proposition, such as Agan v. Shannon, 103 Mo. 661; Fancher v. Prock, 88 S. W. (2d) 179. There is no doubt about that being true as a general proposition, but will it aid the plaintiff under the evidence in this case? The guardian's deed conveyed to the appellant a clay pit described as being located on and within a certain tract of real estate specifically described by metes and bounds. It is conceded that a small portion of the pit in controversy was not within that specific description. But appellant argues that we should take into consideration the order of the Probate Court to the guardian to carry out the option to purchase under a certain lease executed by August Pignet, before he was declared a person of unsound mind. An examination of that order discloses that the Probate Court found that "on the ——day of ——, 1933," August Pignet was the owner of "the northeast quarter of the northeast quarter of Section 21, Township 43, Range 8 west," and that he "entered into a certain mineral lease and option with one B. F. Ferrier for the sale of certain fire clay thereon, as set forth in said lease and option; that said option was thereafter on the —— day of ——, 1933, assigned by the said Ferrier to the Mexico Refractories Company . . . and that they are now the holders of said lease and option;" that it would be to the best interest and advantage of said estate that said fire clay and pit be sold, and then ordered the guardian to sell the same and execute a good and sufficient instrument of conveyance. When we examine the petition filed by the guardian upon which the above order was made, it refers to a lease and option to purchase "dated on the —— day of ——,. 1933," and alleges that by said lease and option the said August Pignet had granted to one Ferrier "the right to mine, remove and ship all the fire clay found in a certain pit in the northeast corner of said northeast quarter of the northeast quarter of Section 21, Township 43, Range 8 west, *more fully described and set forth in said lease* . . .;" (Italics ours) and prayed that he be ordered to execute a sufficient instrument conveying all of the fire clay minerals "found in and upon the northeast part of the northeast quarter of the northeast quarter . . . as described in the lease aforesaid."

We search the record in vain for any lease between these parties dated on the ——— day of ———, 1933. It is in evidence that there was such a lease as testified by Ferrier, but he also testified that the lease was considered cancelled when another one was entered into on May 15, 1934, and a third one on August 7, 1934. Therefore, there is a total failure of proof as to what property or land was leased and optioned by the lease of 1933, so when the petition, instead of specifically describing the property, only refers "as described in the lease aforesaid," and the order of the probate court based on such petition, in describing the property to be conveyed, says "as set forth in said lease and option," and such lease not being before us, we cannot determine what specific property, if any, was described in such lease. Therefore, such lease and the petition of the guardian and the order of the probate court thereon will not aid the appellant in correcting or expanding the specific description contained in the guardian's deed. In its argument, appellant continually refers to the lease and option dated August 7, 1934, but there is nothing in the probate records to show that the sale and conveyance was based on that lease and option. We conclude that under the evidence in this case, neither the trial court, nor this court, would be justified in undertaking to correct any defect in the description in the guardian's deed by reference to any other written instrument, or the order of the probate court, since the instrument on which the probate court order was made is not before us.

In arriving at this conclusion, we have in mind that where an omission is patent and the meaning obvious, it can be cured by construction of the deed by the court without resort to an equitable proceeding to correct it. [Fancher v. Prock, *supra*, and cases there cited.] But such a situation does not exist here because, as above said, we do not have before us the instrument on which the guardian's petition and the probate court order was made, and, therefore, any description in such instrument cannot aid us in piecing out what the parties really intended to convey, and we are left to the specific metes and bounds description contained in the guardian's deed.

Appellant next contends that respondent was not a *bona-fide* lessee for value without notice of that portion of the fire clay pit that was not included within the metes and bounds description of the guardian's deed, because he had either constructive or actual notice of appellant's rights under its lease of August 7, 1934, and the guardian's deed, both of which had been recorded in the recorder's office of Osage County. The lease executed by the heirs of August Pignet to respondent described the leased premises as "all that part of the north half of Section 21 . . . not heretofore conveyed, leased, demised or let to other parties . . ." Appellant states its contention on this point in this language: "Had he (respondent) checked the guardian's deed to appellant, he would have discovered that it recited that it was made in obedience to the order of the probate court and was based

upon the original lease and option to Ferrier, which was assigned to appellant." An examination of the guardian's deed discloses that it makes no reference to a lease or option, but merely refers to the order of the probate court authorizing the sale and conveyance of certain real estate therein described which, it is now contended, is an erroneous description due to some one's negligence, but whose is not made clear. Had the respondent examined the guardian's petition and the order of the probate court made thereon, he would, of course, have learned that it referred to a lease dated on the ——— day of ———, 1933, but it is admitted by Ferrier, who was the lessee, and who assigned it to appellant, that such lease was never filed of record in the recorder's office of Osage County. The lease and option of August 7, 1934, was recorded and described the real estate as follows: "A certain fire clay mine situated in the northeast corner of the northeast quarter of the northeast quarter of Section 21 . . ., being about one-eighth mile north and west of a certain fire clay pit on said premises heretofore mined by A. P. Green Fire Clay Company; and being pit heretofore drilled and prospected by the lessee herein, and now being mined by said lessee . . ." That lease and option was recorded on the 25th day of August, 1934, after being assigned by Ferrier to the appellant. We are unwilling to say that that description would impute actual or constructive notice to the respondent that the appellant was claiming rights beyond the confines of the specific metes and bounds description contained in the guardian's deed. Appellant cites the case of Loring v. Groomer, 110 Mo. 632, to support its contention made under this point, and while we have no quarrel with the general principles of law announced in that case concerning constructive notice and what knowledge recorded instruments will impute, nevertheless we do not consider that case controlling under the facts in this case.

Respondent makes certain attacks upon the validity of the guardian's deed, but under the views above expressed, we consider it unnecessary to discuss such matters.

The judgment of the trial court should be affirmed. It is so ordered. All concur.