Tommy G. **PIRTLE**, Appellant,

v.

Shirley A. (Pirtle) **COOK**, Respondent.

No. 79785.

Supreme Court of Missouri,
En Banc.

Nov. 25, 1997.

Rehearing Denied Dec. 23, 1997.

J. Michael Bridges, Richard Dorr, Springfield, for Appellant.

Leo Chestnut, Springfield, for Respondent.

COVINGTON, Judge.

The marriage of Shirley A. Pirtle (Wife) and Tommy G. Pirtle (Husband) was dis-

solved in September of 1984. The trial court awarded maintenance to Wife and divided the marital property. Husband later filed a motion to terminate the maintenance award. On September 22, 1994, Wife filed a motion to revive judgment and request for declaratory judgment in which she attempted to revive a money judgment contained within the September 1984 decree. The trial court refused to modify the maintenance award and revived the earlier judgment. The Court of Appeals, Southern District, affirmed in part and reversed in part. This Court granted transfer to decide whether section 516.350.1, RSMo 1994,[1] bars Wife's attempt to revive the September 1984 judgment. The judgment of the trial court is affirmed in part and reversed in part.

## I.

Husband petitioned for a dissolution of marriage from Wife by a petition filed November 30, 1982. Trial was scheduled for September 10, 1984. On that date, the trial judge made the following docket entry:

Petr appears in person and by atty Harpool. Resp appears in person and by atty Elsey. Evidence heard, petition proven. Property settlement received and approved. Dissolution of marriage ordered per decree filed.

Also on September 10, the trial judge signed and entered a decree of dissolution of marriage. In several places in the decree, the words "Petitioner" and "Respondent" are transposed.

On September 24, 1984, the trial judge made the following docket entry:

Court is advised of typing error contained in Decree entered 9–10–84 and does enter Amended Decree of Dissolution reflecting correction of same. Copies of amended Decree forwarded to attys Elsey and Harpool.

The "amended decree" was signed and entered on September 26, 1984. The terms "Petitioner" and "Respondent" are used correctly in the amended decree.

The property settlement agreement to which the docket entry of September 10,

1984, referred is incorporated into the dissolution decree. It contains the following provisions:

3. It is mutually agreed that the parties are joint owners of real estate located at Fordland, Missouri, consisting of a farm with 106 acres and 100 acres, and more particularly described on Exhibit A attached hereto. This property is subject to a first deed of trust in favor of Empire Bank with a balance of $90,699.35 plus $11,090.26 interest (which accrues at the rate of $33.55 per day), and which property has a value of approximately $173,000.00. It is mutually agreed that the real estate shall be sold, and the proceeds, after cost of sale and payment of the indebtedness to Empire Bank, shall be divided between the parties, with wife to receive 65% of the net proceeds and Husband to receive 35% of the net proceeds.

4. As a division of the martial property, it is agreed and understood that wife shall receive from Husband the minimum sum of $40,000.00. However, such sum shall be paid from the proceeds of the sale of real estate above set out, but should such sale proceeds be insufficient to pay said sum of $40,000.00, then Husband shall make up the difference out of other assets owned by Husband. It is also understood that should the 65% of net proceeds from the sale of all the real estate exceed the sum of $40,000.00, that Wife shall receive any additional sum as her separate property that would result in a net to her of 65% of such sale net proceeds. Husband shall receive 35% of the net proceeds of such sale. It is further agreed that such sum agreed upon to be owed to wife shall be non-dischargeable in bankruptcy. Parties agree to confer with tax consultants prior to closing date of sales, so that each party will be able to have maximum benefits for tax purposes. It is further agreed that wife shall continue to live in the property rent free, until sale, but should she desire to remove herself therefrom, then Husband may move into the house and occupy it rent free until sale.

1. All references to statutes are to RSMo 1994.

5. It is further agreed that the real estate shall be listed for sale immediately by the parties, and that the listing price on each farm shall be determined by the parties, but that the parties have agreed that a sale offer of $85,000.00 or above shall be acceptable to both parties, as to the 100 acres, and the price of $88,000.00 or above on the 106 acres.

The marital real estate did not sell, and the lender foreclosed on February 8, 1985. The parties received no proceeds from the foreclosure sale. Husband did not pay Wife the $40,000 specified in the decree.

In October of 1990, the parties commenced litigating various issues concerning the decree and property settlement agreement. During the course of the litigation, Husband filed a motion to modify seeking to terminate his obligation to pay periodic maintenance. On August 19, 1991, Wife filed a pleading styled "Motion to Enforce Judgment." Husband filed an answer to the motion to enforce raising affirmative defenses. The motion to enforce judgment was never heard by the trial court.

On September 22, 1994, Wife filed a "Motion to Revive Judgment and Request for Declaratory Judgment" in which she sought revival of the September 1984 judgment ordering Husband to pay her $40,000. The trial court entered an order to show cause. Husband filed a response to the motion to revive in which he reasserted his prior affirmative defenses. In addition, he asserted that he had not been properly served with the motion to revive and that more than ten years had passed since the date of the original dissolution decree. The trial court heard evidence on the motion to revive judgment, request for declaratory judgment, and motion to modify. The trial court then entered a judgment interpreting the property settlement agreement, reviving Wife's judgment, and denying Husband's motion to modify.

## II.

■ Husband contends that the trial court erred in reviving Wife's judgment. Husband asserts that section 516.350.1 prevents the revival of the judgment because Wife filed her motion to revive more than ten years after the judgment was originally rendered. This Court agrees.

Section 516.350.1 provides as follows:

Every judgment, order or decree of any court of record of the United States, or of this or any other state, territory or country, except for any judgment, order, or decree awarding child support or maintenance which mandates the making of payments over a period of time, shall be presumed to be paid and satisfied after the expiration of ten years from the date of the original rendition thereof, or if the same has been revived upon personal service duly had upon the defendant or defendants therein, then after ten years from and after such revival, or in case a payment has been made on such judgment, order or decree, and duly entered upon the record thereof, after the expiration of ten years from the last payment so made, and after the expiration of ten years from the date of the original rendition or revival upon personal service, or from the date of the last payment, such judgment shall be conclusively presumed to be paid, and no execution, order or process shall issue thereon, nor shall any suit be brought, had or maintained thereon for any purpose whatsoever.

Section 516.350.1 plainly states that judgments are conclusively presumed paid ten years after they were originally rendered unless a party has revived the judgment[2] or entered a payment upon the record. Sec. 516.350.1. Once the conclusive presumption arises, the judgment cannot be revived and no suit can be maintained upon it. *Id.*

Because Wife's motion to revive was filed on September 22, 1994, the first question is whether the "original rendition" of the judgment in this case is the decree of dissolution entered on September 10, 1984, or the amended decree entered on September 26, 1984. If September 10 is the date of the

2. A judgment may be revived by order of the court that entered it pursuant to a motion for revival filed by a judgment creditor within ten years after entry of the judgment or the last prior revival of the judgment. Rule 74.09(a).

original rendition of the judgment, then Wife's motion to revive was filed more than ten years after the judgment was originally rendered and is barred by section 516.350.1 unless properly revived in the interim. If, however, September 26 is the date of the original rendition of the judgment, then Wife's motion to revive fell within the ten year period specified by section 516.350.1.

When the September 10, 1984, decree was entered, it constituted the original rendition of the judgment. The docket entry shows that the trial court received the property settlement, approved it, and ordered the dissolution of the parties' marriage on September 10. On that day, the trial court also signed and entered the dissolution decree, which included Husband's obligation to pay Wife $40,000. Consequently, September 10 became the date of the original rendition of the judgment when the September 10 decree was entered. *See Wormington v. City of Monett,* 358 Mo. 1044, 1050, 218 S.W.2d 586, 589 (banc 1949).

The issue is whether the September 26 decree replaced the September 10 decree as the original rendition of the judgment. This, in turn, depends upon whether the September 26 decree is an order nunc pro tunc or an amended judgment entered pursuant to Rule 75.01. If the September 26 decree is a nunc pro tunc order, then it does not constitute the original rendition of the judgment because it relates back to the September 10 decree. *See Cruces v. State,* 452 S.W.2d 180, 182 (Mo.1970). If, however, the September 26 decree is a Rule 75.01 amended judgment, then it constitutes a new judgment and, consequently, is the original rendition of the judgment Wife now seeks to revive. *See Kahn v. Kahn,* 839 S.W.2d 327, 334 (Mo.App. 1992). Consequently, Wife's motion to revive, filed on September 22, 1984, was timely only if the September 26 decree constitutes an amended judgment pursuant to Rule 75.01.

To determine whether the September 26 decree is a nunc pro tunc order or a Rule 75.01 order, it is necessary to understand the nature of each type of order. Rule 75.01 provides, "The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time." This power to amend or vacate a judgment traces its origin to the common law. Comment, *Procedure—Setting Aside Final Judgments in Missouri,* 28 Mo. L.Rev. 281, 281 (1963).

At common law, trial courts sat in terms. *See* 3 W. Blackstone, Commentaries * 407. The trial court was not considered to have spoken until the end of the term when the final judgment of the court was announced. During the term of the court, each cause was considered to be in the breast of the court. *Wooten v. Friedberg,* 355 Mo. 756, 763, 198 S.W.2d 1, 5 (1946). Consequently, the court had plenary power over a cause during its term. *Aull v. St. Louis Trust Co.,* 149 Mo. 1, 14, 50 S.W. 289, 292 (1899).

Because the trial court had plenary jurisdiction over the cause during its term, it could open, modify, or vacate its judgment during the term. *Id.* The court's judgment is a judicial act, the exercise of judicial power, that finally determines the rights of the parties. *See Kansas City v. Woerishoeffer,* 249 Mo. 1, 26, 155 S.W. 779, 784 (banc 1912); *McMillan v. Wells,* 924 S.W.2d 33, 35 (Mo. App.1996); *State v. Nesler,* 922 S.W.2d 459, 461 (Mo.App.1996); *In re Marriage of Wilfong,* 658 S.W.2d 45, 47 (Mo.App.1983). The court's jurisdiction over its cause, therefore, allowed the court to alter the judicial determination of the parties' rights.

The court's power to alter the parties' rights during its term has always been accepted in Missouri. As this Court stated in 1887, "That a court of general jurisdiction, proceeding according to the course of the common law, has unlimited power during the whole of the term over its judgments rendered at such term is a rule of universal application. Until the end of the term its judgments are in the breast of the court, and may be modified, vacated, or set aside, as justice demands, becoming absolute only upon the adjournment of the court for that term...." *Rottmann v. Schmucker,* 94 Mo. 139, 144, 7 S.W. 117, 119 (1888) (citations omitted).

When terms of court were abolished in Missouri, the court's power over its judgments was embodied in statutes and supreme court rules that authorized the trial court to retain jurisdiction over its judgment for a limited period. *See Wooten,* 355 Mo. at 763, 198 S.W.2d at 5. These statutes and rules were eventually combined into Rule 75.01. Comment, *Procedure—Setting Aside Final Judgments in Missouri,* 28 Mo. L.Rev. 281, 281 (1963).

■■■ Rule 75.01 represents the modern embodiment of this common law power and contains the rules that govern its exercise. Because a court's power to change its judgment threatens the finality of the judgment and, consequently, slows the litigation process, the period in which the trial court can make such a change is limited to only thirty days. *See Kattering v. Franz,* 360 Mo. 854, 856, 231 S.W.2d 148, 149 (1950)(stating that one purpose of 1943 Code of Civil Procedure was to speed up litigation). Because an amended judgment affects the rights of the parties, Rule 75.01 authorizes a change in the judgment only after the parties receive notice and an opportunity to be heard. *See Albert J. Hoppe, Inc. v. St. Louis Pub. Service Co.,* 361 Mo. 402, 406–08, 235 S.W.2d 347, 349–50 (banc 1950); *State ex rel. Kairuz v. Romines,* 806 S.W.2d 451, 453–54 (Mo.App. 1991).

■■■ Nunc pro tunc orders have a different history. The power to enter a nunc pro tunc order is a common law power derived from a court's jurisdiction over its records. 3 W. Blackstone, Commentaries * 407. A court is considered to have continuing jurisdiction over its records. This jurisdiction exists independently from the court's jurisdiction over its cause or its judgment. In *DeKalb County v. Hixon,* 44 Mo. 341 (1869), this Court discussed the jurisdictional basis for entering nunc pro tunc orders: "The court had lost its jurisdiction of the case, but not of its records. It had authority, as well after as before the appeal, to amend its records according to the truth, so that they should accurately express the history of the proceedings which actually occurred prior to the appeal." *Id.* at 342.

The court's power over its records, therefore, exists so that the court can cause its records to represent accurately what occurred previously. This power is one to enter nunc pro tunc (now for then) an accurate record entry of a judgment previously rendered. "No question can exist as to the power of the [c]ourt to make *nunc pro tunc* entries, for the furtherance of justice, and thus to place on the records the action of the [c]ourt, had on a former day of the term, or at a previous term, and which the clerk had omitted to enter at the time." *Hyde v. Curling & Robertson,* 10 Mo. 359, 362–63 (1847).

■ The correction of the record can be made at any time regardless of whether the court has jurisdiction over its cause. *DeKalb County,* 44 Mo. at 342. "The power ... to correct clerical mistakes and misprisions is of daily occurrence, and it seems that no limit in point of time has ever been placed upon its exercise...." *Loring v. Groomer,* 110 Mo. 632, 639, 19 S.W. 950, 951 (1892). "During the progress of a cause and before final judgment, or after final judgment during the same term, *nunc pro tunc* entries may be made in furtherance of justice to conform the entries to the truth." *Saxton v. Smith,* 50 Mo. 490, 491 (1872). "That a court has a right, at a term subsequent to one at which a judgment is rendered, to correct by an order *nunc pro tunc,* a clerical error or omission in the original entry, is indisputable." *Allen v. Sales,* 56 Mo. 28, 34–35 (1874).

■ The power to issue nunc pro tunc orders, however, constitutes no more than the power to make the record conform to the judgment already rendered; it cannot change the judgment itself. *Warren v. Drake,* 570 S.W.2d 803, 806 (Mo.App.1978). "It is universally held that the only true function of a nunc pro tunc order is to correct some error or inadvertence in the recording of that which was *actually done,* but which, because of that error or omission was not properly recorded; and, that it may not be used to order that which was *not* actually done, or to change or modify the action which was taken." *City of Ferguson v. Nelson,* 438 S.W.2d 249, 253 (Mo.1969)(emphasis in original).

■ Because the power to correct a court's records was not dependent upon the court's jurisdiction over a cause during the court's term, the abolition of terms had no effect on the power to issue nunc pro tunc orders. *See Abbott v. Seamon,* 229 S.W.2d 695, 699 (Mo.App.1950). This common law power to correct the record continues to this day. In 1988, Rule 74.06 embodied this power by authorizing a court to correct clerical errors. *See Higher Educ. Assistance Found. v. Hensley,* 841 S.W.2d 660, 662 (Mo.1992). A clerical error is an error made in the recording of a judgment; therefore, the correction of a clerical error conforms the record to the judgment of the court. *See First Nat'l Bank v. Goldfarb,* 527 S.W.2d 427, 430 (Mo.App.1975).

■ Because a nunc pro tunc order merely causes the record to reflect the true judgment of the court, this power can be exercised at any time. *See Abbott,* 229 S.W.2d at 699–700. Because nunc pro tunc orders do not enter new judgments, but are confined to the record, no notice or opportunity to be heard need be given. Rule 74.06(a); S*ee McCarthy v. Eidson,* 262 S.W.2d 52, 54 (Mo. banc 1953); *Goldfarb,* 527 S.W.2d at 431–32. Finally, because a correction of the record does not affect the court's judgment, the changes relate back to the original judgment and do not constitute a new judgment. *Abbott v. Seamon,* 217 S.W.2d 580, 587 (Mo.App.1949)(stating that "[t]he courts have held that an order nunc pro tunc does not change the judgment and, when made, its legal effect relates back to the date the judgment was actually made"); *see Cruces,* 452 S.W.2d at 182 (holding nunc pro tunc entry related back to original judgment).

At common law and under the modern rules, the distinction between the power to amend a judgment and the power to correct a record has been recognized consistently. The distinction is evident in Missouri's cases. "The purpose of Rule 75.01 is clear. It enables the trial court to rectify any errors in the judgment, and thus simplify or forestall any further litigation at the appellate level." *Bell v. Garcia,* 639 S.W.2d 185, 189 (Mo.App. 1982). " 'The purpose of the nunc pro tunc amendment is to make the record conform to what was actually done' .... [A]n order *nunc pro tunc* may be used only to correct a clerical error in entering a rendered judgment, it may not be used to alter or amend the rendered judgment." *Unterreiner v. Estate of Unterreiner,* 899 S.W.2d 596, 598 (Mo.App.1995)(quoting *Brunton v. Floyd Withers, Inc.,* 716 S.W.2d 823, 826 (Mo.App. 1986)). *See Harrison v. State,* 10 Mo. 686, 689 (1847)(stating that power to correct or amend judgments where clerk has failed to enter judgment rendered may be more properly denominated the correction of a clerical error or omission).

The distinction between altering a judgment and conforming the record to the judgment was summarized as follows:

The common law rule of universal application was that a court of general jurisdiction had the power, during the term at which its judgments were rendered, to modify, vacate, or set aside those judgments.... Under Rule 75.01 of the Missouri Rules of Civil Procedure, a trial court now has the same power, during a thirty day period following rendition of a judgment, to vacate, modify or set aside that judgment.... One common law procedure still utilized by the courts to correct judgment entries of record is the issuance of orders nunc pro tunc. The literal translation of nunc pro tunc is "now for then," which reveals both the retroactive effect of such an order and its purpose, which is to correct some error in the record of the judgment—to do something now which should have been done previously at the time of the judgment. Such orders are authorized only where the original record entry of the judgment is not the actual judgment rendered by the court. In such a case the court of rendition may issue an order nunc pro tunc to make the record conform to the judgment actually rendered. Thus, orders nunc pro tunc are not true exceptions to the rule prohibiting courts from altering or setting aside their judgments after thirty days; they merely enable the courts to make their records conform to the judgment actually rendered upon a cause.

Comment, *Procedure—Setting Aside Final Judgments in Missouri*, 28 Mo. L.Rev. 281, 281–82 (1963)(footnotes omitted).

The history and rationale behind nunc pro tunc orders and Rule 75.01 orders illustrate that each type of order is separate and distinct. Rule 75.01 embodies the court's plenary jurisdiction over its cause and authorizes a court to change its judgment—the judicial declaration of the parties' rights—in order to simplify or forestall an appeal. The power to enter nunc pro tunc orders arises from the court's power over its records and authorizes a court to correct clerical errors in the judgment entry—the record of the court's action—so that the court's records accurately reflect the court's judgment. The rules governing the exercise of these powers and whether they constitute new judgments have developed because of the difference between the types of changes each rule effects.

When characterizing a court's order, it is, therefore, necessary to determine whether an order changes the original judgment or only the record. This determination is not new to Missouri courts. In *Roedel v. Roedel*, 788 S.W.2d 788 (Mo.App.1990), the trial court granted temporary maintenance, custody, and child support to the wife in a dissolution of marriage proceeding. *Id.* at 789. After the line in the order where the court awarded temporary maintenance were the words "retroactive to date of filing." *Id.* Several days later, the husband received another copy of the order *pendente lite* in which the phrase "retroactive to date of filing" was supplemented to read "retroactive to date of filing as to child support and maintenance." *Id.*

In analyzing whether the trial court had erred in making the change without providing notice and opportunity to be heard, the court in *Roedel* first considered whether the order was an amended judgment entered pursuant to Rule 75.01 or a nunc pro tunc order entered pursuant 74.06. *Id.* at 790. It concluded, "This is more than a mere clerical error in recording the judgment. Here, the record is devoid of any writing showing that the trial court originally intended both awards to be retroactive. In fact, the court's minutes support the original order that only

temporary maintenance was to be retroactive. In short, the trial court's actions amounted to a modification of the judgment...." *Id.* Consequently, the court held that the change made by the trial court was an amendment of the judgment pursuant to Rule 75.01. *Id.*

In *Lockett v. Musterman*, 854 S.W.2d 831 (Mo.App.1993), the trial court granted a dissolution of marriage on January 15, 1991, pursuant to a stipulation entered between the parties. *Id.* at 832–33. The trial court formally acknowledged the stipulation on January 25, 1991, when the court signed a decree for dissolution of marriage. *Id.* at 833. On February 22, 1991, the trial court entered an amended decree of dissolution of marriage, which added a legal description of the marital home. *Id.* Because the trial court had lost jurisdiction over the judgment by February 22, 1991, the court considered whether the amended decree was an amended judgment or an order nunc pro tunc. *Id.* The court of appeals concluded that the amended decree was a nunc pro tunc order because it effected no substantive change; it merely added a legal description of property already described in the prior orders and known by both parties. *Id.* at 834.

The analysis employed in Missouri's cases is the same as that applied by the federal courts. Rule 60(a) in the Federal Rules of Civil Procedure is identical to Missouri Rule 74.06(a) in pertinent part, and these rules are declarative of the court's common law power to enter nunc pro tunc orders. *Higher Educ.*, 841 S.W.2d at 662; *see Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir.1983); Note, *A History and Interpretation of Rule 60(a) of the Federal Rules of Civil Procedure*, 42 Drake L.Rev. 461, 464–469 (1993). Missouri Rule 75.01 has no exact counterpart in the Federal Rules, but Federal Rule 59(e) represents the analogous federal power to alter or amend the judgment. *See White v. New Hampshire Dep't. of Emp. Security*, 455 U.S. 445, 450, 102 S.Ct. 1162, 1165–66, 71 L.Ed.2d 325 (1982). The federal courts determine whether motions and orders are entered pursuant to Rule 60(a) or Rule 59(e) according to the nature of the alteration sought in the motion

or made by the court. *See Vaughter v. Eastern Air Lines, Inc.,* 817 F.2d 685, 689 (11th Cir.1987); *Miller,* 709 F.2d at 527. If the alteration corrects a clerical error, the motion seeking the change and the order accomplishing it are classified under Rule 60(a), but if the order makes a substantive change in the judgment, then the motion and order are classified under Rule 59(e). *See Vaughter,* 817 F.2d at 689–691; *Huey v. Teledyne, Inc.,* 608 F.2d 1234, 1236–37 (9th Cir.1979). "The history of Rule 59(e) shows that 'alter or amend' means a substantive change of mind by the court. In contrast, a court's failure to memorialize part of its decision is a clerical error. Power to correct clerical errors of omission derives from Rule 60, not Rule 59(e)." *Miller,* 709 F.2d at 527(citations omitted).

■ In Missouri, the determination of whether an order corrects the record or amends the judgment is not made on a level playing field. A presumption exists that there are no clerical errors in judgments. *Pfeifer v. Pfeifer,* 788 S.W.2d 780, 781 (Mo. App.1990). If the presumption is not rebutted, then any order that changes the record is presumed to change the judgment as well.

■ The party seeking to show that an order is an order nunc pro tunc must show that the original judgment entry did not accurately reflect the court's actual judgment and that the subsequent order merely caused the record to conform to the true judicial determination of the parties' rights. *See In re Marriage of Royall,* 569 S.W.2d 369, 370–71 (Mo.App.1978). In other words, the subsequent order must do nothing more than correct a clerical error. *Unterreiner,* 899 S.W.2d at 598. To constitute an order nunc pro tunc, the order cannot correct anything that resulted from the exercise of judicial discretion because any such change constitutes a change in the court's judgment. *Gordon v. Gordon,* 390 S.W.2d 583, 586–87 (Mo.App.1965). Additionally, as has been long established, the clerical error must be discernible from the record. *Warren,* 570 S.W.2d at 806.

Applying the law to the facts of the instant case, the record establishes that the September 26 decree is a nunc pro tunc order. The September 26 decree merely transposes the terms "Petitioner" and "Respondent" from the original decree. The original decree, among other things, granted to "Petitioner" the name "Shirley A. Cook" and the marital property designated as Shirley Pirtle's in the property settlement agreement. The record, however, clearly establishes that the petitioner was Husband.

Thus, the original decree, by its use of the terms "Petitioner" and "Respondent," granted "restoration" of the name "Shirley A. Cook" to Husband and awarded to him the property that the parties agreed would be Wife's. It is obvious that the court did not intend as an exercise of judicial discretion to restore the name "Shirley A. Cook" to Husband and to incorporate the settlement agreement into the decree, while, at the same time setting aside to each party marital property that each agreed would be set aside to the other. *See Johnson v. Johnson,* 654 S.W.2d 212, 214 (Mo.App.1983). Rather, an error was committed in labeling the parties. *See Goldfarb,* 527 S.W.2d at 431. The mislabeling of parties constitutes a clerical error, not a judicial error. *Royall,* 569 S.W.2d at 371. This conclusion is confirmed by the judge's docket sheet. The docket entry states, in pertinent part, "Court is advised of typing error contained in Decree entered 9–10–84 and does enter Amended Decree of Dissolution reflecting correction of same."

The September 26 decree corrected only a "typographical" error, the misuse of the terms "Petitioner" and "Respondent" in the original decree, so that it conformed to the court's true judgment. The September 26 decree did not delete any provisions, add any provisions, or otherwise change the decree. Consequently, the "decree" bearing the date of September 26, 1984, is an order nunc pro tunc correcting the record of the trial court's September 10, 1984, judgment. *Id.* The order of September 26, 1984, relates back to the September 10, 1984, decree. As a consequence, September 10, 1984, remains the date of the original rendition of the judgment

Wife seeks to revive.[3]

Wife contends that the September 26, 1984, decree could not have been a nunc pro tunc order because, she asserts, the September 26 decree corrected a judicial, not clerical, error in the September 10 decree. Wife points to the fact that the separation agreement filed with the court was not signed or notarized until September 11. Wife disregards, however, the undisputed fact that according to the September 10 docket entry, the parties had by that date entered into their separation agreement. The decree entered on September 10 also states that the parties had entered into a written settlement agreement and refers to portions of that document. The fact that the document attached to the September 26 decree is signed and notarized on September 11 is insufficient to establish that the trial court committed judicial error. Furthermore, the docket entry of September 24 indicates that the September 26 decree served to correct only the typographical errors in the original decree, another fact that Wife does not dispute. The dissolution decree entered on September 26, 1984, is a nunc pro tunc order.

Because the dissolution decree that wife attempted to revive was originally rendered on September 10, 1984, the ten year limitation period of section 516.350.1 commenced to run on that date. Sec. 516.350.1. Wife never recorded a payment on the judgment debt. Wife did not file a motion to revive until more than ten years after the judgment was originally rendered. Consequently, the statute plainly dictates that the judgment is conclusively presumed to be paid and no suit can be maintained thereon. *Id.*

Wife makes several arguments in an attempt to avoid the conclusive presumption

that the judgment she seeks to revive has been paid. Each of Wife's contentions, however, contradicts the clear and unambiguous language of section 516.350.1. *See Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 19–20 (Mo. banc 1995)(stating that statutes of limitations are favored and cannot be avoided unless party brings himself strictly within an exception). Consequently, this Court rejects each argument in turn.

Wife first asserts that the ten-year period set forth in section 516.350.1 did not run until the parties' real property was sold on February 8, 1985. She argues that the statute could not have begun to run until the property was sold because, until the sale, she could not have known whether she was entitled to $40,000 or to $40,000 plus 65% of the amount by which the profit from the sale of the house exceeded $40,000.

Wife relies on *In re Estate of Remmele,* 853 S.W.2d 476 (Mo.App.1993). In *Remmele,* the decedent had entered into a separation agreement with his former wife. *Id.* at 478. The agreement required him to execute an irrevocable will naming his three children as sole beneficiaries of his estate. *Id.* He did not do so. *Id.* When he died, two of the decedent's children brought an action against his estate as third party beneficiaries of the separation agreement. *Id.* The court of appeals concluded that the statute of limitations for breach of contract actions was tolled by section 516.100, which tolls contract statutes of limitations until the damage from the breach is sustained or capable of ascertainment. *Id.* at 479.

Wife's reliance on *Remmele* is misplaced. In *Remmele,* the statute of limitations at issue was that governing actions for breach of contract. *Id.* at 478. In the instant case,

**3.** In arguing that the September 26 decree is an amended judgment, the dissent relies exclusively upon *Moyer v. Walker,* 771 S.W.2d 363 (Mo.App. 1989), a case distinguishable in two respects. First, in the present case, Husband has shown that the record entry of September 10 did not accurately record the court's judgment because of a clerical error and that the September 26 order, therefore, changed only the record, not the judgment, when it corrected that error. Probably because the court of appeals raised the issue of the timeliness of appeal *sua sponte, Moyer* never considered the claim Husband raises

here. Second, there is no indication that the trial court in *Moyer* violated the Rule 75.01 requirement for notice and an opportunity to be heard. Rule 75.01; *see Terre Du Lac, Inc. v. Black,* 713 S.W.2d 18, 21 (Mo.App.1986). In this case, however, the trial court provided neither notice nor an opportunity to be heard before it entered its September 26 order. This Court should not indulge the dissent's presumption that the trial court acted pursuant to Rule 75.01 even though it failed to comply with the mandates of that Rule. *See Higher Educ.,* 841 S.W.2d at 662.

the statute of limitations is that governing actions to enforce a court's money judgment. Sec. 516.350.1. *Remmele* never addressed the operation of section 516.350.1; therefore, *Remmele* is inapposite to the instant case.

More importantly, the tolling statute upon which the court in *Remmele* relied, section 516.100, does not apply to the limitation period at issue here. Section 516.100 tolls certain statutes of limitations by mandating that "the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment." The ten year limitation period in section 516.350.1 begins to run upon the original rendition of a judgment, not upon a wrong, breach of contract, or breach of duty. Sec. 516.350.1. By its plain language, therefore, section 516.100 does not apply to the limitation period in section 516.350.1.[4]

Although Wife cites no authority that supports her contention that the statutory period in section 516.350.1 did not run while the parties' property remained unsold, her contention has been addressed previously and rejected. In *Hedges v. McKittrick,* 153 S.W.2d 790 (Mo.App.1941), attorneys received a judgment entitling them to payment of fees from proceeds from the sale of certain property. *Id.* at 792. The property was never sold; consequently, the attorneys could not execute on their judgment. *Id.* at 794. The attorneys brought suit on the judgment more than ten years after it was rendered. *Id.* at 793. They argued that the statute of limitations should be tolled while the property remained unsold. *Id.* at 794. The court refused to toll the statute and barred the attorneys' suit because the situation did not come within any of the exceptions contained within the statute and the attorneys could have protected themselves by timely reviving the judgment. *Id.*

This Court finds *Hedges* to be authoritative in the instant case. *Hedges* rests upon a plain reading of section 516.350.1, which provides that judgments shall conclusively be presumed to be paid and satisfied ten years after the "original rendition" of the judgment. Sec. 516.350.1. The statute dictates that the limitation period begins to run when the judgment is rendered, not when the debt becomes certain, due, or enforceable. *See Wormington,* 358 Mo. at 1048–1050, 218 S.W.2d at 587–591. The statutes provide no tolling period during which debts are uncertain or uncollectible. *Id.* Consequently, the inability to collect a debt does not prevent the normal operation of section 516.350.1[5]. *Id.*

Wife's inability to collect on her judgment for the first five months of the statute's ten year period does not justify ignoring the plain dictate of the legislature. Wife could have pursued her 1991 motion to enforce or timely filed her motion to revive. She did neither. Her argument is without merit.

■ Wife next proffers an argument based upon the holding of *Excelsior Steel Furnace Co. v. Smith,* 17 S.W.2d 378 (Mo. App.1929). The court in *Excelsior Steel* held that a pending suit on a judgment instituted

---

4. This conclusion is buttressed by considering the effect of a contrary conclusion. No judgment creditor sustains or ascertains damage until the judgment debtor defaults on the judgment debt. Thus, if section 516.100 acted to toll the statute of limitations in section 516.350.1, the latter statute would begin to run only upon default, not upon the original rendition of the judgment. The words of section 516.350.1 would be rendered meaningless.

5. *In re Marriage of Holt,* 635 S.W.2d 335 (Mo. banc 1982), a case cited by neither party, states that decretal incremental child support and maintenance payments are not subject to the normal application of section 516.350.1 because the future payments are uncertain and, consequently, not subject to collection. *Id.* at 337.

*Holt* concluded that the statutory exception for child support and alimony, which stated that the limitation period ran for each periodic payment when it became due, applied retroactively. *Id.* at 338. *Holt* should not be followed here because *Holt* turned on the unique nature of the periodic payments at issue in that case. *Holt* did not address the application of section 516.350.1 to single payments like that involved in the instant case. *Id.* With regard to judgments for single sums, this Court concludes that our precedent is clear that the inability to collect does not affect the time limitation in section 516.350.1, *See Wormington,* 358 Mo. at 1048–1050, 218 S.W.2d at 587–589, which is more consistent with the statute's plain language than the decision in *Holt.*

just before the ten year limitation period elapsed extended the judgment beyond the limitation period specified in the predecessor of section 516.350.1. *Id.* at 379–380. Wife asserts that because she filed a motion to enforce in 1991, her motion to revive is timely.

Even if the holding in *Excelsior Steel* were to apply to a case in which a motion to enforce was filed and an untimely motion to revive was then filed three years later, the holding of *Excelsior Steel* is of no assistance in this case. *Excelsior Steel*'s construction of the predecessor of section 516.350.1 is inconsistent with both the statute's plain meaning and this Court's jurisprudence. *Wormington,* 358 Mo. at 1052–53, 218 S.W.2d at 590–91.

*Excelsior Steel*'s holding was first criticized in *Wormington v. City of Monett,* 358 Mo. 1044, 218 S.W.2d 586 (banc 1949). In *Wormington,* this Court held that the ten year statute of limitations continued to run from the date of rendition of the judgment even where the parties were appealing the judgment at issue. *Id.* at 1048–50, 218 S.W.2d at 588–89. This Court then addressed the holding in *Excelsior Steel* and concluded that *Excelsior Steel* misconstrued the predecessor of section 516.350.1. *Id.* at 1052, 218 S.W.2d at 590. This Court stated that "the institution of a suit on a judgment may not extend the life of the judgment after the period of [section 516.350.1] has elapsed." *Id.* at 1053, 218 S.W.2d at 591.

Under the language of section 516.350.1, *Wormington,* not *Excelsior Steel,* is correct. A judgment is revived by a motion to revive or a recorded payment during the ten year period. Sec. 516.350.1; Rule 74.09. A motion to enforce is neither a recorded payment nor a motion to revive. *See Meyer v. Ragar,* 935 S.W.2d 97, 99 (Mo.App.1996) (discussing motions to revive). Further, no statutory authority exists to toll the limitation period while a motion to enforce is pending. Consequently, a motion to enforce does not affect the expiration of the time limit contained in section 516.350.1. *See Wormington,* 358 Mo. at 1052–53, 218 S.W.2d at 590–91. To the extent *Excelsior Steel* holds to the contrary, it is overruled. Wife's motion to enforce

does not prevent the expiration of the time limit in section 516.350.1.

■ Finally, Wife argues that her untimely motion to revive relates back to her motion to enforce. Her argument is functionally the same as that rejected above. A timely motion to enforce does not prevent the expiration of the time limitation contained in section 516.350.1, *See Wormington,* 358 Mo. at 1052–53, 218 S.W.2d at 590–91, nor does a motion to revive filed more than ten years after the judgment was rendered. To allow an untimely motion to revive to relate back to a timely motion to enforce would circumvent the intended operation of section 516.350.1.

Wife's relation back argument is also defeated by the only authority upon which she relies, Rule 55.33. Wife argues that her motion to revive was an amendment of her motion to enforce and, consequently, relates back to her motion to enforce pursuant to Rule 55.33(c). Rule 55.33 deals with amended and supplemental pleadings. Subsection (c) of Rule 55.33 provides, in part:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Subsection (a) of Rule 55.33 provides in pertinent part:

> A pleading may be amended once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the pleading may be amended at any time within thirty days after it is served. Otherwise, the pleading may be amended only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Because Husband filed a responsive pleading to Wife's motion to enforce, Rule 55.33 mandates that Wife's motion to enforce could be amended only upon leave of the court or written consent of the adverse party. Rule 55.33(a). Wife, however, sought no leave to amend the motion to enforce for the purpose of transforming it into a motion to revive. Furthermore, Wife never indicated that the

motion to revive was an amended motion when she filed it. Wife's post hoc characterization of her motion to revive as an amended motion is insufficient to invoke Rule 55.33(c).

In sum, the statute of limitations in section 516.350.1 commenced to run from September 10, 1984, when the judgment at issue was originally rendered. Wife failed to revive the judgment or to enter a payment of the judgment on the record within ten years from that date. Consequently, the judgment is conclusively presumed paid, and no execution or suit can be brought or maintained on it. Sec. 516.350.1. The portion of the trial court's judgment that interpreted the meaning of the separation agreement and revived the judgment is reversed.

### III.

■ One issue remains. Husband also complains that the trial court erred in denying his request to terminate his maintenance obligation. This Court's review of the trial court's denial of Husband's request is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). This Court will affirm the trial court's judgment if its findings are supported by substantial evidence and are not against the weight of the evidence. *Id.* at 32. Husband's claim is that the trial court's determination was not supported by substantial evidence and was against the weight of the evidence. This Court has read the transcript of the proceedings filed herein. A recitation of the facts serves no useful purpose. That portion of the trial court's judgment denying Husband's request for termination of Wife's maintenance was supported by substantial evidence and was not against the weight of the evidence.

### IV.

That portion of the judgment interpreting the meaning of the parties' separation agreement and reviving the judgment is reversed. In all other respects, the judgment is affirmed.

BENTON, C.J., ROBERTSON and WHITE, JJ., and BARNES, Special Judge, concur.

PRICE, J., dissents in separate opinion filed.

LIMBAUGH, J., concurs in opinion of PRICE, J.

HOLSTEIN, J., *not sitting.*

PRICE, Judge, dissenting.

I dissent.

In denying a woman's attempt to enforce an unpaid $40,000 judgment from an Amended Decree of Dissolution, the majority confuses the distinction between an amended judgment pursuant to Rule 75.01, Mo. R. Civ. P., and a nunc pro tunc order, and *ignores* the clear precedent of *Moyer v. Walker*, 771 S.W.2d 363 (Mo.App.1989).

In this case, the trial court entered an Amended Decree of Dissolution. The trial court is allowed to do this because it is granted control of its judgments for thirty days pursuant to Rule 75.01. Within this time, a trial court is allowed to "vacate, re-open, correct, amend, or modify its judgment." There is no restriction in Rule 75.01 that would prevent a trial court from entering an amended judgment to correct a typing error.

A nunc pro tunc order is something quite different. It is an order that is generally entered after the time within which a trial court is allowed control of its judgment has expired. Because of this, a nunc pro tunc order may only correct clerical-type mistakes. *See,* 2 Mo. Practice section 19.07 (1992) and 16 Mo. Practice section 75.01–7 (1976). The unique nature of a nunc pro tunc order is stated in Black's Law Dictionary 1218 (Revised 4th Ed.1968), as:

> A phrase applied to acts allowed *to be done after the time when they should be done,* with a retroactive effect, *i.e.,* with the same effect as if regularly done. (Emphasis supplied.)

While nunc pro tunc orders are within the inherent power of a court, in 1987 we provided specific and separate authority, apart from Rule 75.01, for nunc pro tunc orders in Rule 74.06, Mo. R. Civ. P., which states:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court *at any time* ... (Emphasis supplied.)

As the majority points out, because nunc pro tunc orders are generally entered out of time, and may only correct clerical errors, they *must* relate back to the time they were originally ordered. Amendments made during the time period within which the trial court has control of its judgments, however, need not necessarily relate back. These amendments are valid in and of themselves when made because the court has power to do what it believes is necessary during this time.

The majority cites to *no Missouri authority* to support its proposition that an amended decree entered within the period of time that the trial court has jurisdiction pursuant to Rule 75.01, even if its effect is to correct typographical errors, must be treated as a nunc pro tunc order that relates back to the date of entry of the original decree. In fact, one Missouri decision is directly on point, *Moyer v. Walker*, 771 S.W.2d 363 (Mo.App. 1989), and holds to the contrary. Writing for the Court of Appeals, Southern District, Judge Holstein stated:

> The record shows that an original judgment was filed on April 1, 1988. Thereafter on April 15, 1988, a first amended judgment was filed. The amended judgment was essentially the same as the first judgment but substituted the word "plaintiff" for "defendant" in paragraphs 14 and 15 of the findings of fact. The notice of appeal was filed on May 13, 1988. A trial court may amend a judgment within thirty days after entry of judgment. Rule 75.01. While the trial court did not vacate the original judgment before filing the amended judgment, the effect of the amendment was entry of a new judgment. *Daniels v. Daniels*, 675 S.W.2d 29, 32 (Mo.App.1984). Consequently, the amended judgment was not final for purposes of appeal until May 15, 1988, and the notice of appeal was timely. Rule 84.05.

Of course, the majority is free to abandon previous Missouri law and to read in a new way our carefully crafted rules of civil procedure, if logic or good cause would require it to do so. The majority decision, however, can claim neither.

The majority's argument is not supported by logic but instead violates classical rules of logic. The essence of the majority's argument is that:

1. Nunc pro tunc orders only correct clerical errors;
2. This order corrects clerical errors; and, therefore,
3. This order is a nunc pro tunc order.

This form of argument is referred to in basic logic textbooks as the "Fallacy of Affirming the Consequent" and is universally condemned as invalid. Irving M. Copi, *Introduction to Logic*, p. 292 (5th ed. ); R. Angell, *Reasoning and Logic*, p. 148 (1964). The mistake in this type of argument is simply stated by Angell as follows:

> This form is invalid since even if we accepted both premises as true, it would be possible to deny the conclusion consistently:

> If it has been sub-zero weather for three days, then it is safe to skate.
> It is safe to skate.

> If $p$ then $q$.

> $q$

> _____

> Hence, it has been sub-zero weather for three days.

> Hence, $p$.

> It is easy to see that the conclusion does not follow necessarily. The reason why it is now safe to skate might be something other than three days of sub-zero weather; perhaps ten days of weather at twenty above zero. To say this would not be to deny that if there *had* been three days of sub-zero weather it would also have been safe to skate, or that it is safe to skate now. In other words the premises could both be true, though the conclusion was false; thus it is not *valid*.[1]

_____

**1.** Or, in language more common to the legal profession, the majority's argument is akin to stating that:

1. All judges are lawyers;
2. "A" is a lawyer; therefore
3. "A" is a judge.

In our case, the majority's argument simply cannot account for the possibility that the trial court's order may be justified by Rule 75.01 [2] and may constitute a new entry of judgment.[3] The majority's argument is legally invalid by textbook definition.

The majority opinion also fails to establish any good cause for abandoning the law stated in *Moyer v. Walker.* No mischief or injustice is cited resulting from that opinion. Sadly, however, this is not true for the majority decision. It creates an immediate injustice. It allows a husband judgment debtor to walk away from a $40,000 judgment, leaving his unpaid former wife without remedy.

---

**2.** The majority misfires, again, when it attempts to argue that the trial court did not comply with the notice and hearing requirement of Rule 75.01. The record entry indicated that the court was "advised" of the typing error and that "copies of amended decree forwarded to attys Elsey and Harpool." The record indicates no objection by either attorney. There can be no valid issue made regarding this point. *State v. Kenley,* 952 S.W.2d 250 (Mo. banc 1997).

**3.** The record indicates the trial court's intention to enter a new judgment, not merely a nunc pro tunc correction. The trial court titled its judgment as an "Amended Decree of Dissolution of Marriage" not a "Nunc Pro Tunc Order." The trial court's judgment was a two-page document, restated in its entirety, complete within its four corners. It was not merely an indication of correction of certain errors.