Betty Ann HANFF, Plaintiff/Respondent,

v.

Shirley HANFF, Defendant/Appellant.

No. 74239.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 29, 1998.

Motion for Rehearing and/or Transfer Denied March 9, 1999.

Application to Transfer Denied
April 27, 1999.

---

Harold G. Johnson, Mitchell D. Johnson, St. Ann, for appellant.

Lindsay A. Dibler, Wuestling & James, L.C., St. Louis, for respondent.

JAMES R. DOWD, Presiding Judge.

First wife filed an action to recover from second wife pension funds, life insurance proceeds, and past due maintenance that decedent husband was ordered to pay to first wife pursuant to a dissolution decree. The trial court entered summary judgment in favor of first wife on a constructive trust theory. Second wife appeals. We reverse and remand with instructions.

## I. Factual Background

Betty Ann Hanff ("Betty Ann") and Thomas R. Hanff ("Thomas") were married on February 11, 1956. The marriage produced four children. For reasons unclear from the record, they decided to divorce. On December 5, 1983, Betty Ann and Thomas negotiated and stipulated to a Property Settlement Agreement ("Agreement") to divide their marital property. As part of the Agreement, Thomas promised to: (1) pay Betty Ann $150 per month for the first two years following the entry of the dissolution decree and $200 per month thereafter; (2) retain Betty Ann as the beneficiary on all life insurance policies in existence at the date of separation of the parties; and (3) retain Betty Ann as the beneficiary on his pension plan. At the time of the Agreement, Thomas owned two life insurance policies. The first policy provided coverage in the amount of $10,000, and the second policy provided coverage in the

amount of $2,406. On January 10, 1984, the trial court entered a dissolution decree which incorporated the Agreement by reference.

On July 3, 1985, Thomas married Shirley Marie Alexander ("Shirley"), who is now known as Shirley M. Hanff, appellant herein. Without notice to Betty Ann and in violation of the dissolution decree, Thomas did the following: on January 29, 1986, he substituted Shirley for Betty Ann as the named beneficiary on his pension; on February 24, 1986, he surrendered his second insurance policy and obtained different insurance policies which named Shirley as beneficiary; and on August 21, 1990, he changed the beneficiary on his first insurance policy from Betty Ann to Shirley. Despite making these changes, Thomas continued to represent to Betty Ann that she remained the beneficiary on his pension and life insurance policies; he last made such a representation in 1994. On October 5, 1994, Shirley read the dissolution decree and became aware of its terms, including Thomas' promise to retain Betty Ann as the beneficiary on Thomas' pension fund and life insurance policies.

Thomas died on March 26, 1995 never having paid any maintenance to Betty Ann. After Thomas' death, Betty Ann discovered that she was no longer named as a beneficiary on Thomas' pension fund or on the life insurance policies. On March 26, 1995, Shirley filed a claim with Thomas' pension fund and collected $88,540.80. She also received $10,000 in insurance proceeds under the first life insurance policy, and collected proceeds from the life insurance Thomas purchased to replace his second policy. At no time has Betty Ann taken any steps to enforce her rights under the decree against either Thomas or his estate.

On October 2, 1996, Betty Ann filed the present action against Shirley to recover pension benefits, life insurance proceeds, and past due maintenance. The amended petition consisted of three counts: constructive trust, unjust enrichment, and conversion.

Both parties filed motions for summary judgment. The trial court granted summary judgment in favor of Betty Ann, apparently on a constructive trust theory, holding Shirley liable for pension benefits in the amount of $88,540.80, life insurance proceeds in the amount of $12,406, and past due maintenance in the amount of $42,000. The trial court also awarded Betty Ann pre-judgment interest in the amount $16,625.94.

On appeal, Shirley contends that the trial court erred in granting summary judgment in favor of Betty Ann because: (1) Betty Ann failed to produce sufficient evidence to establish that a constructive trust existed between the parties; (2) the dissolution decree was unenforceable with respect to Betty Ann's claim for pension benefits and insurance proceeds because the decree was not revived within ten years of its entry; (3) Betty Ann's claim for past due maintenance was unenforceable on the grounds of laches and estoppel and that Betty Ann failed to plead a claim on which relief could be granted; and (4) the assignment of Thomas' pension fund violates ERISA.

## II. Standard of Review

When considering an appeal from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is granted where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. Rule 74.04. The propriety of summary judgment is purely an issue of law and we need not defer to the trial court's judgment. *ITT*, 854 S.W.2d at 376. Our review is essentially *de novo*. *Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court initially. *Id.*

## III. Analysis

### A. Pension Benefits and Insurance Proceeds

■ We first consider Shirley's argument that the ten year statute of limitations bars Betty Ann's claims for pension benefits and insurance proceeds. Section 516.350.1 RSMo 1994 provides as follows:

> Every judgment, order or decree of any court of record of the United States, or of this or any other state, territory or country, except for any judgment, order, or decree awarding child support or maintenance which mandates the making of payments over a period of time, shall be presumed to be paid and satisfied after the expiration of ten years from the date of the original rendition thereof, or if the same has been revived upon personal service duly had upon the defendant or defendants therein, then after ten years from and after such revival, or in case a payment has been made on such judgment, order or decree, and duly entered upon the record thereof, after the expiration of ten years from the last payment so made, and after the expiration of ten years from the date of the original rendition or revival upon personal service, or from the date of the last payment, such judgment shall be conclusively presumed to be paid, and no execution, order or process shall issue thereon, nor shall any suit be brought, had or maintained thereon for any purpose whatever.

In response, Betty Ann claims that her action is not barred by section 516.350.1 because the cause of action did not accrue until she discovered that Thomas violated the dissolution decree. In support of her argument, Betty Ann relies on sections 516.100 and .280. Under section 516.100, a "cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and capable of ascertainment." Sec. 516.100 RSMo 1994 (emphasis added). Section 516.280 tolls the statute of limitation pertaining to the commencement of an action when a person, by improper act, prevents the commencement of the action.

■ We disagree with Betty Ann's interpretation of sections 516.100 and 516.280. By their very terms, neither of these statutes purports to toll section 516.350. Instead,

they toll the running of the statutes of limitation on *causes of action*, not on the enforceability of judgments. Section 516.350 alone determines the time in which a judgment may be enforced, and the exceptions contained therein operate exclusively to toll its application.

Betty Ann also argues that because the pension benefits and insurance proceeds were not collectible during the ten year period, section 516.350 does not apply. *Pirtle v. Cook,* 956 S.W.2d 235 (Mo. banc 1997), a case cited by neither party, is instructive on this question. In *Pirtle,* the trial court entered a dissolution decree on September 10, 1984 in which Wife was awarded maintenance and a share of the marital property. Husband never paid Wife maintenance as required by the decree. On September 22, 1994, Wife filed a motion to revive the judgment, and the trial court granted the motion. Husband appealed, claiming that section 516.350.1 prevented the revival of the judgment. The Supreme Court found the plain language of the statute precluded reviving the judgment.[1] Even though Wife was unable to collect the judgment because of Husband's delay in selling the parties' real property, the court believed section 516.350.1 was directory and did not admit of any exception.[2] According to the court, the statute contemplated no tolling period for periods when a judgment is uncollectible:

> The statute dictates that the limitation period begins to run when the judgment is rendered, not when the debt becomes certain, due, or enforceable. The statutes provide no tolling period during which debts are uncertain or uncollectible. Consequently, the inability to collect a debt does not prevent the normal operation of section 516.350.1.

Wife's inability to collect on her judgment for the first five months of the statute's ten year period does not justify ignoring the plain dictate of the legislature. *Id.* at 245; *accord In re Marriage of Ronollo,* 936 S.W.2d 188, 189–90 (Mo.App. E.D.1996)

("The ten years runs from the date of judgment, not the date the judgment becomes collectible.").

Although section 516.100 or .280 may have tolled the statute of limitations on Betty Ann's cause of action until she discovered the violation, her action necessarily depends on the enforceability of the dissolution decree. Absent timely revival, section 516.350 plainly forbids the enforcement of judgments over ten years old by conclusively presuming the judgments have been paid. The language of section 516.350 naturally lends itself to a bright-line approach: either revive a judgment within ten years of its entry or relinquish all rights of enforcement. Applying this standard, it is sufficient to note that Betty Ann knew the date of the dissolution decree and failed to take any action to revive the judgment within the ten year period. Therefore, section 516.350 now precludes any action to enforce the decree.

## B. Past Due Maintenance

Shirley also claims that the trial court erred in holding her liable for Thomas' past due maintenance debts on the ground that the debt was collectible only from Thomas. In response, Betty Ann maintains that because Shirley and Thomas only possessed joint accounts, from which Thomas' debt for past due maintenance was payable, Shirley was unjustly enriched by Thomas' nonpayment. In essence, Betty Ann seeks to hold Shirley liable for Thomas' general debts on the ground that Shirley was aware of Thomas' violation of the decree and that she maintained a confidential relationship with Thomas by virtue of their marriage.

"Past due support payments owed by a former husband to the former wife pursuant to a court order for support payments constitute a debt so that accrued and unpaid installments become judgments in favor of former wife." *Helfenbein v. Helfenbein,* 871 S.W.2d 131, 134 (Mo.App. E.D.

---

**1.** As a preliminary matter, the court determined that the trial court's amended decree, which was entered on September 24, 1984, was an order *nunc pro tunc,* and not an amended judgment pursuant to Rule 75.01.

**2.** The exact amount Wife was entitled to receive under the decree could not be determined until the sale of the real property.

1994). Ordinarily, a judgment creditor may recover a general debt only from the judgment debtor or his estate. The proper procedure for collecting judgments for past due support from a deceased spouse is to file a claim against the spouse's estate.[3] *See In the Matter of Wisely,* 763 S.W.2d 691, 692 (Mo.App. E.D.1988). Accordingly, we hold that Betty Ann has failed to state a claim against Shirley for past due maintenance.

The judgment is reversed and remanded with instructions to enter judgment in favor of Shirley.

LAWRENCE G. CRAHAN, J., and RICHARD B. TEITELMAN, J., concur.

*On Motion for Rehearing and/or Transfer*

█ In a motion for rehearing and/or transfer, counsel for Betty Ann argues, among other things, that because Shirley failed to plead section 516.350 RSMo 1994 as an affirmative defense, we erred in holding that section 516.350 precluded Betty Ann's claim for insurance proceeds and pension benefits. Indeed, Shirley failed to plead section 516.350 as an affirmative defense in her answer. However, beginning in a motion for summary judgment and continuing in this appeal, Shirley has consistently argued that Betty Ann's claim was barred by section 516.350. Rather than objecting to this argument on the ground that Shirley failed to plead section 516.350 as an affirmative defense, Betty Ann's counsel chose to address the substantive merits of the argument. Accordingly, the issue was tried by implied consent of the parties and must be treated as though it had been raised in the pleadings. *Heins Implement Co. v. Missouri Highway & Transp. Comm'n,* 859 S.W.2d 681, 685 (Mo. banc 1993); Rule 55.33(b). Thus, our reliance on section 516.350 was appropriate. The motion is denied in all respects.

---

**3.** Betty Ann suggests in her brief that Thomas possessed few, if any, probate assets at his death, and therefore, any claim against his estate would have been worthless. Even assuming the truth of this allegation, Betty Ann provides no explanation as to how Thomas' lack of probate assets justifies holding Shirley liable for his debts. Moreover, Betty Ann, as an interested person, could have petitioned to require administration of Thomas' estate to compel a judicial determination of the nature and character of Thomas' assets. Sec. 473.020 RSMo 1994.